MARINE TRANSIT CORPORATION v. NORTHWESTERN FIRE & MARINE INS. CO. et al.

No. 13248.

District Court, E. D. New York.

Feb. 7, 1933.

490

William J. Mahar, of New York City, for libelant.

Purdy & Purdy, of New York City, for respondent Northwestern Fire & Marine Ins. Co.

Bigham, Englar, Jones & Houston, of New York City (George S. Brengle and Henry N. Longley, both of New York City, of counsel), for respondent Globe & Rutgers Fire Ins. Co.

BYERS, District Judge.

The libelant seeks to recover, from either or both of the respondents, $28,132.23, being the amount which it has paid in satisfaction of a decree rendered against it in behalf of Louis Dreyfus & Co., plus the sum of $5,814.-03, counsel fees and disbursements incurred, making in all the sum of $33,946.26, with interest from April 14, 1932.

The cause in which that decree was rendered is reported in 49 F.(2d) 215, and the facts (as stated in the opinion of the Circuit Court of Appeals) which gave rise to the liability are as follows:

Dreyfus & Co. shipped 19,200 bushels of wheat upon the barge Edward A. Ryan, at Buffalo, for delivery at New York. The Ryan, with two other barges, was in tow of the tug Gerald A. Fagan on September 25, 1928, when, on entering the government lock at Troy, New York, the Ryan came in contact with the guard wall, and sank with its cargo.

A libel in rem was filed against the Fagan and in personam against the Marine Transit Corporation, the carrier, with the result that a decree was entered in favor of Dreyfus & Co. as stated.

The libelant in this cause procured from the Globe & Rutgers Fire Insurance Company a policy of insurance covering the tug Fagan against tower's liability claims, and on September 13, 1928, it declared the said shipment of grain to the Northwestern Fire & Marine Insurance Company under its open policy dated April 18, 1928, covering its legal liability as a carrier.

This libelant was the owner of the tug Fagan and the barge Ryan, and the question for determination is where the ultimate loss should fall.

In the brief filed for the Globe & Rutgers Company, it is conceded that the cargo loss was occasioned by the negligent navigation of the tug Fagan, and thus all questions of fact are eliminated from the case, and the decision will involve only questions of law arising under the contracts of the parties.

Each respondent is generous in tendering its good offices to the libelant to demonstrate that liability lies with the other.

It will be convenient to examine the policies in the order of priority. That issued by the Globe & Rutgers Company is on a form headed "A. I. A. Ocean Tug Special," and the tug is valued, for the purposes of insurance, at $30,000, and the policy is to cover any loss which may occur to her, etc., under conditions stated, with the privilege to navigate any coastwise and inland waters. The applicable provision of the policy reads as follows:

"And it is further agreed that if the vessel hereby insured, or her tow shall come into collision with any * * * structure, floating or otherwise, * * *, and the assured, as owner of the vessel, shall in consequence thereof become liable to pay and shall pay by way of damages to any other person or persons any sum or sums not exceeding in respect of any one such casualty the value of the Vessel hereby insured, we, the assurers, will pay the assured such proportion of such sum or sums so paid as our subscriptions hereto bear to the value of the vessel hereby insured. And in cases where the liability of the vessel has been contested, with the consent in writing, of a majority of the underwriters on the hull and machinery (in amount), we will also pay a like proportion of the costs and/or expenses thereby incurred or paid;
* * *

"It is further agreed that in no event shall this Insurance Company be liable under this policy for more than the sum insured in any case, by reason of any or all of the conditions thereof."

By a rider dated September 6, 1928, it is provided as follows:

"It is hereby understood and agreed that the Deductible Average Clause in this policy is amended to read as follows:—

" 'In all cases $300. shall be deducted and in no event shall there be made a deduction of one third new for old.' "

And, under date of August 31, 1928, a rider is attached, which recites: "It is hereby understood and agreed that the attached collision and Towers' Liability Clause is substituted for the clause now contained in the policy, the latter being waived. This correction to be effective from inception of insurance."

The new clause was substituted for that contained in the body of the policy and, for present purposes, reads as follows:

"And it is further agreed that if the vessel hereby insured, or her tow shall come into collision with any * * * structure, floating or otherwise, ˮ * *, and the assured, as owner of the vessel, shall in consequence thereof become liable to pay and shall pay by way of damages to any other person or persons any sum or sums not exceeding in respect of any one such casualty the value of the Vessel hereby insured, we, the assurers, will pay the assured such proportion of such sum or sums so paid as our subscriptions hereto bear to the value of the vessel hereby insured. And in cases where the liability of the vessel has been contested, with the consent in writing, of a majority of the underwriters on the hull and machinery (in amount), we will also pay a like proportion of the costs and/or expenses thereby incurred or paid; * * * and it is further agreed that this policy shall also extend to and cover the said vessel's legal liability for any collision with any * * * structure, floating or otherwise, * * * which may occur to any vessel or vessels or craft while in tow of said vessel, subject to all the terms and conditions of this clause. It is hereby further agreed ˮ * * ; provided always that this clause shall in no case extend to any sum which the assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, or for loss of life or personal injury."

The Globe & Rutgers Company asserts that its policy (which was not prepared by brokers acting for libelant) does not impose upon it liability for the loss in question because that was occasioned by the loss of cargo laden on the barge Ryan, although the latter was being towed by the Fagan at the time. This contention requires examination in the light of the express undertaking, above quoted, to compensate the owner of the vessel for damages paid "to any person," for, unless the cargo owner is not such, it is difficult to see why the loss does not fall within the precise terms of the policy.

The principal argument of this respondent is that, because the tow and the barge were engaged in a common enterprise at the time that the cargo was lost, the identity of the tug became merged in that of the barge and in the eyes of the law they are to be regarded as one vessel, which means that the tug ceased to be a tug and became a carrier, and hence reimbursement can be had only under a policy which insured the legal liability of the carrier.

It will be seen that this contention, while ingenious, does not lead to any inevitable conclusion; if the tug in legal contemplation became a carrier because of the decision in Sacramento Navigation Company v. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663, by the same process the barge became also the power factor in the single unit employed in this operation—which does not change the nature of the problem presented.

It is thought that the question of responsibility on the part of the Globe & Rutgers Company depends upon the provisions of its contract, and not upon the fortuitous circumstance that the carrier had a separate policy covering its legal liability.

If the Globe & Rutgers Company's policy is to be held not to cover this loss, it can only be because the contract did not so contemplate. Reliance is placed upon the case of Lehigh & Wilkes-Barre Coal Co. v. Globe & Rutgers Fire Insurance Co., 1924 A. M. C. 589, affirmed (C. C. A.) 6 F.(2d) 736, 43 A. L. R. 215. In this case, recovery was sought under policies of marine insurance issued to the owner of the tug which had been held liable for damages suffered by barges in tow of the tug, and, in connection with the running-down clause, Judge Ward observed, sitting in the District Court: "The running-down clause in my judgment does not cover the liability of the owner of the insured tug for any damage sustained by the tow." He further held that the tower's liability clause did not apply, because the striking of the barges therein involved was not a collision within the contemplation of the policy. The Circuit Court of Appeals affirmed the decision.

Clearly no issue was presented in that case as to the liability of the tug for a cargo loss, on the part of a barge in tow of the tug, caused by the negligent navigation of the tug, and therefore the question now presented was not passed upon.

The insistence upon the contention that the tower's liability clause in the policy under examination does not cover liability for damage to cargo being carried by the tug (i. e., by a barge in tow of the tug) invites the comment that, if such liability were intended to be excluded from the policy, appropriate language to that end would have been employed.

For the purposes of this litigation, the tug did not become a barge any more than the barge became a tug, and the decisions which announce the rule that all the elements of a

single tow are regarded as one vessel for the purposes of the Harter Act have been re-examined, and suggest no reason for concluding that the Globe & Rutgers Company should be relieved, under the existing circumstances, from the obligation of the contract of insurance for which the owner of the tug paid the agreed premium; this leads to the conclusion that, so far as the $28,132.23 item is concerned, the liability of the Globe & Rutgers Company is clear.

■ So far as the counsel fees and expenses incident to the litigation are concerned, it is difficult to see how a different conclusion can be arrived at. The pleadings and the record in the original case have been examined, and it is quite clear that the issue litigated was the negligent navigation of the tug, and that the defense was conducted throughout with the knowledge of the Globe & Rutgers Company which was brought home to it in correspondence which constitutes. one of the exhibits in this case. If the Globe & Rutgers Company had intended to disclaim liability for counsel fees and disbursements in the conduct of that litigation, there was a clear duty resting upon it so to advise the assured, and the failure to do so must be deemed to constitute a waiver of the requirement that a consent to the employment of counsel should be in writing.

Had the defense of the tug been successful, the Globe & Rutgers Company would have been benefited thereby, and from and after April 13, 1929, it is clear that an affirmative duty rested upon that company to disclaim the employment of counsel, if it intended to take that attitude, in view of the letter written by the loss department of the insurer on January 21, 1929.

■ To the extent of the agreed limit of liability of the Globe & Rutgers Company, namely, $29,700, it should be called upon also to pay the counsel fees and disbursements here in suit, there being no question as to the reasonableness of the charge made for proctors' services.

■ It now becomes necessary to consider the nature of the liability assumed by the Northwestern Fire & Marine Insurance Company under the policy to which reference has been made. The latter document is an open policy which became effective April 18, 1928, in the sum of $50,000, subject to declarations to be made thereunder. The contract was prepared by brokers acting for the assured, and consequently is not to be most strongly construed against the company. The substantial provisions are embodied in thirty-six par-

agraphs, and it appears that the insurance was intended to cover cargoes of grain carried in approved wooden barges, and that the carrier's legal liability was also subject to be included, and that a declaration concerning $26,880.00 valuation of wheat on the barge E. A. Ryan under bill of lading dated September 13, 1928, was declared and paid for, as to the carrier's legal liability, on the same date.

■ There can be no doubt that resort might be had by the carrier to this policy for reimbursement for a loss sustained by reason of the matters litigated in the suit to which reference is made above; the only argument seriously advanced against such liability is with reference to the provisions of paragraph 24, which read as follows:

"24. At the option of the assured and provided such option is availed of at time of reporting shipments and before any known or reported loss or accident and so stated on the declaration of insurance, this policy covers the Legal Liability of the assured as carriers, warehousemen, wharfingers, forwarders, freighters as imposed by the law and from which they cannot release themselves.

"The assured warrant that they will assume no liability for merchandise held in their custody as carriers, warehousemen, wharfingers, forwarders, freighters, beyond that imposed by the law and from which they cannot release themselves.

"The assured further agree that they will in no way consent to any act or agreement which shall in any way admit any liability in any matter connected with this insurance to the prejudice of these assurers without the consent of these assurers in writing."

It is urged that the second clause was violated by the carrier, because it issued a bill of lading according to the New York Produce Exchange Charter Party No. 1, whereby the carrier agreed to assume liability for its own negligence and thereby waived the immunity which would otherwise have obtained under the provisions of the Harter Act (46 USCA §§ 190–195). This argument is not thought to be sound, because of the provision which occurs in paragraph 16, reading as follows:

"The assured not to be prejudiced by the presence of the Negligence Clause and/or Latent Defect Clause in the Bills of Lading and/or Charter Party and/or contract of Affreightment. Notwithstanding anything herein contained, however, this insurance shall not cover beyond the policy limits as herein elsewhere set forth."

It is urged for the Northwestern Company that the foregoing does not apply to so

much of the policy as has to do with the carrier's legal liability but only to the cargo insurance aspect of the contract.

It is sufficient to say that the clause does not so provide and, if it were intended that paragraph 24 was not to be construed as within the contemplation of paragraph 16, a saving clause would have been inserted in either to that effect. The foregoing construction renders it unnecessary to pass upon the libelant's contention that this respondent, by its conduct after the loss occurred, waived the right to raise this defense, although, if it were necessary to pass upon this point, the decision would be that there was no waiver; i. e., this respondent did not do or refrain from doing anything whereby the libelant's position was changed.

The holding, that paragraph 16 permitted the assured to waive its rights under the Harter Act without affecting the insurance, renders it unnecessary to pass upon the contention urged by this respondent, that the custom of carriers on the Canal so to waive the Harter Act was not binding upon this respondent because not consented to in writing.

■ It remains to consider the effect of paragraph 25, which reads as follows:

"In case the interest hereby insured is covered by other insurance (except as hereinafter provided) the loss shall be collected from the several policies in the order of the date of their attachment, insurance attaching on the same date to be deemed simultaneous and to contribute pro rata; provided, nevertheless, that where any fire insurance, or any insurance taken out by the assured or holders of certificates hereunder or by any carrier, bailee or others is available to the beneficiary of this policy, or would be so available if this insurance did not exist, then this insurance shall be void to the extent that such other insurance is or would have been available, the assurers being only liable for so much as such other insurance may be deficient towards fully covering the loss hereunder; but in such cases these assurers shall receive and retain the premium payable under this policy, and, in consideration thereof, shall guarantee the solvency of the companies and/or underwriters who issued such other insurance and the prompt collection of the loss thereunder to the same extent (only) as this insurance shall have become void under the terms of this clause, but not exceeding, in any case, the amount which would have been collectible under this policy if such other insurance did not exist."

"The interest hereby insured" is the carrier's legal liability. The interest insured by the other respondent is tower's and collision insurance, and these are not thought to be identical. It is true that the Marine Transit Corporation was engaged in one task, that of carrying grain in an inert barge, to move which it also supplied the power; the company, however, took the precaution of procuring separate insurance to cover its liability in either capacity, and it is entitled to enforce its contracts upon that theory.

This means that so much of the foregoing paragraph applies as reads:

"That where * * * any insurance taken out by the assured * * * is available to the beneficiary of this policy, or would be so available if this insurance did not exist, then this insurance shall be void to the extent that such other insurance is * * * available, the assurers being only liable for so much as such other insurance may be deficient towards fully covering the loss hereunder; but in such cases these assurers * * * shall guarantee the solvency of the companies and/or underwriters who issued such other insurance * * *."

For the purpose of adjusting the rights of the parties, the situation may be clarified by considering the distribution of loss as though the owner of the barge Ryan had been called upon by cargo interests to reimburse them for their loss under the circumstances shown, and the towing vessel was under separate ownership; in that event the owner would have impleaded the tower, and, the latter having been guilty of negligence, the decree would have held the latter primarily and the owner secondarily liable.

The circumstances here involved seem to point to such an outcome in this litigation, which means that the Globe & Rutgers Company is liable for the loss actually sustained and the counsel fees and disbursements incurred in contesting the litigation, but the limit of its policy is $29,700.00, with interest from the date of the said decree, February 7, 1930, and, the carrier being secondarily liable, the underwriter of its legal liability must respond for the loss to the extent that it is not covered by the Globe & Rutgers Company's policy, and accordingly a decree should be entered, calling upon the Globe & Rutgers Company to pay $29,700.00, and upon the Northwestern Fire & Marine Insurance Company to pay the balance of the amount sought to be recovered according to the prayer of the libel, up to the limit of $26,880.00, with interest from the date of the loss, namely, Sep-

tember 25, 1928, and the latter company is liable as guarantor in accordance with the provisions of paragraph 25 of its policy above quoted.

■ While it is argued for the Northwestern Company that it cannot be held for any part of the counsel fees and disbursements incurred in the defense of the original litigation, it is thought that the secondary liability extends so far.

Settle decree on notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals as to ownership and incorporation.