**TRAVELERS INDEMNITY COM-
PANY, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 71–287.**

United States District Court,
D. Oregon.

Sept. 13, 1974.

Tooze, Kerr, Peterson, Marshall & Shenker, E. Richard Bodyfelt, Portland, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., William B. Borgeson, Asst. U. S. Atty., Portland, Or., James P. Klapps, U. S. Dept. of Justice, Lawrence E. Cox, U. S. Dept. of Interior, Washington, D. C., for defendant.

## OPINION

SOLOMON, Judge:

Travelers Indemnity Company (Travelers) filed this action against the United States (Government) under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. Jurisdiction is based on 28 U.S. C. § 1346. Travelers, as subrogee under an insurance policy issued to Pacific Power and Light Company (Pacific), seeks indemnity from the Government for Travelers' payments to Pacific for an insured loss. Travelers contends that the insured loss was caused by the negligence of the Bonneville Power Administration (Bonneville), an agency of the Government.

Pacific and Bonneville, with the Bureau of Reclamation and other private and public power companies in western United States, planned, constructed and operate the Pacific Northwest-Pacific Southwest Intertie (Intertie). The Intertie is a multiple party transmission program designed to allow its members to utilize their resources and facilities to efficiently purchase and transmit to each other surplus power generated both within and outside the Intertie system.

The Malin Substation (Malin), located in Klamath County, Oregon, is an integral part of the Intertie. Malin was jointly planned, engineered and constructed by Pacific, Portland General Electric Company (PGE) and Bonneville. Some parts of Malin are owned in common by these three parties. Other parts are owned individually. None of the other Intertie parties has any interest in Malin. Under a trust agreement, Bonneville operates, inspects and maintains Malin, including some equipment located there owned solely by Pacific. Pacific pays for these services on an agreed schedule.

Adjacent to Malin, Pacific has its Klamath Falls Interconnection (KFI). Bonneville operates and inspects equipment in this facility.

In 1960, several insurance companies jointly underwrote a comprehensive policy insuring Pacific against casualty losses in several western states, including Oregon. The insurance coverage was arranged by Marsh and McLennan (M & M), insurance brokers. The policy's provisions were derived from M & M's "Standard Clause Manual (June 1958)", a manual of standard insurance policy clauses. In 1966, Travelers underwrote 100 per cent of the coverage.

On June 5, 1969, an explosion and fire damaged Pacific's equipment in Malin and KFI. Travelers paid Pacific $1,657,545 (Pacific's loss less $100,000 deductible) under the insurance policy. Travelers, as subrogee, filed this action to recover that amount from the Government, asserting that the damage was caused by Bonneville's negligence.

The Government denies it was negligent and as an affirmative defense asserts that Travelers waived its right to subrogate against the Government.

The case was tried on the segregated issue of whether Travelers waived that right.

The Government points to the following clause in the insurance policy:

All right of subrogation is hereby waived under this policy against any corporation, firm, individual or other entity to which or to whom coverage is afforded under this policy or *against any corporation, firm, individual or other entity, parent or subsidi-*

*ary to, owned or controlled by or affiliated or associated with [Pacific].* (emphasis supplied)

The Government contends that the evidence adduced at the trial "demonstrates an association or affiliation between [Pacific] and the defendant with respect to the Malin Substation and throughout the Pacific Northwest."

The precise issue presented to this court here is whether Bonneville was "associated with" Pacific; if it was, Travelers contractually waived its right to subrogate against the Government.

To decide this issue, I must determine what the word "associated" means.

■■ Generally, insurance contracts must be strictly construed against the insurer. This rule is based on the principle that the language of a contract should be construed against the party who selected the language. Travelers argues that Marsh and McLennan, the insurance broker for Pacific, wrote the disputed clause and Travelers, therefore, is not responsible for ambiguities in the language.

. This argument overlooks Oregon law which governs this case. ORS 744.165 provides:

Any person who solicits or procures an application for insurance shall in all matters relating to such application for insurance and the policy issued in consequence thereof be regarded as the agent of the insurer issuing the policy and not the agent of the insured.

This statute was applied in Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928), and Northwestern Mut. Life Ins. Co. v. Cohn Bros., 102 F.2d 74 (9th Cir. 1939).

■ For the purpose of construing the language of this insurance policy, we hold that M & M was the agent of Travelers and not the agent of Pacific. Any ambiguities in the language must be construed against Travelers.

Travelers acknowledges that "associated" is a general word, susceptible of both narrow and broad interpretations. But Travelers concedes that it had ample opportunity to comment upon, criticize and suggest changes in the insurance policy. Travelers also concedes that it did not suggest any changes which would have clarified the meaning of the contested language.

Travelers argues that the parties intended to use "associated" in a narrow sense. The testimony of Mr. Inkster of Marsh and McLennan, who prepared the insurance policy, supports that view. He testified that the general word "associated" was not meant to add anything to the more specific words which preceded it. But he admitted that prior to this controversy he had no occasion to consciously consider or articulate the precise meaning of "associated" or the exact nature of his own intentions when he used that word. Furthermore, Mr. Inkster's testimony is suspect. Although not directly employed by Travelers, his livelihood as an insurance broker depends on maintaining amicable relations with major insurance companies such as Travelers.

The Government, on the other hand, refers to Pacific's Answers to Interrogatories which show that Pacific considered Bonneville to be "associated" with Pacific. These statements, like Inkster's, were made after the loss. They are also suspect. Pacific's present and future successful operation in the Pacific Northwest may depend on its close cooperation with Bonneville and the availability of Bonneville's facilities. Pacific's refusal to join as a plaintiff in this action to recoup its $100,000 loss evidences its desire to avoid disrupting friendly relations with Bonneville.

These statements of the subjective intent of Inkster and Pacific do not provide guidance for properly interpreting the word "associated".

Travelers also argues that objective manifestations of intent before the loss support a narrow reading of "associated". M & M and another insurance broker both studied the subrogation clause

in Pacific's policy and the subrogation clause in another policy. Among other differences, the other subrogation clause did not contain the phrase "or associated" after it listed a number of specific relationships. The reports analyzed many differences in the clauses, but neither report discussed the significance of the presence or absence of "associated". Travelers concludes that these studies show that the parties did not intend "associated" to add anything to the more specific and narrow words which preceded it.

■ In my view, this evidence merely supports the conclusion that Travelers, M & M and Pacific did not specifically consider the meaning of "associated" before this controversy. I cannot conclude that the parties intended to use "associated" in the restrictive sense urged by Travelers, particularly considering my earlier determination that the clause is to be strictly construed against Travelers.

■ Travelers contends that the doctrine of *ejusdem generis* compels a narrow reading. In the absence of a clear contrary intent, when general words follow specific words, the general words are limited or confined to the same kind, class or nature as the more specific words. Bumpus v. United States, 325 F.2d 264, 267 (10th Cir. 1963); United States v. Alpers, 338 U.S. 680, 682–83, 70 S.Ct. 352, 94 L.Ed. 457 (1949). *See* United States v. Baranski, 484 F.2d 556, 566–67 (7th Cir. 1973).

Travelers therefore contends that the general word "associated" is limited by the preceding words and phrases: "parent", "subsidiary", "owned . . . by" and "controlled by". Travelers asserts that those specific words define a class of relationships which are characterized by lineage, kinship, and overlapping or reciprocal ownership and control and that "associated" should be limited to such narrow relationships.

■■ The rule of *ejusdem generis* is a useful aid in construction, but it has limitations. When both the general and specific words can be given reasonable effect, both should be retained. A contract should be interpreted to give significance to each word or phrase according to its importance in the context of the contract, Colorado Milling & Elevator Co. v. Chicago, Rock Is. & Pac. R.R. Co., 382 F.2d 834, 836–37 (10th Cir. 1967), and when the specific words exhaust the class described, the general words which follow should be construed to embrace something outside the class. United States v. Mescall, 215 U.S. 26, 31, 30 S.Ct. 19, 54 L.Ed. 77 (1909).

The word "associated" is entitled to a broader interpretation than that urged by Travelers. The specific words preceding "associated" exhaust the class of persons or entities which own or control or are owned or controlled by Pacific. If "associated" is to have any meaning, it must refer to a less direct relationship with Pacific. Strict construction of the clause against Travelers supports this conclusion.

■ The word "associated" in the subrogation clause should be given its broad common and ordinary meaning: "closely connected, joined, or united with another (as in interest, function, activity or office)", Webster's New Third International Dictionary (1966); "unite[d] in action; . . . join[ed] for a common purpose", Webster's New Collegiate Dictionary (1961).

Pacific and Bonneville are connected in the Pacific Northwest through a variety of contracts and agreements. There is a high degree of physical integration between the facilities of the two parties; this integration requires engineering and design coordination. Pacific and Bonneville exchange power. They have a mutual operating and emergency repair agreement which provides for emergency assistance and reciprocal switching operations. Numerous substations are joint projects of the parties.

From the beginning, the Malin Substation was intended as a joint enterprise between Portland General Electric Company, Pacific and Bonneville. Some of the real property at Malin is jointly owned; other real property is subject to cross easements and permits. In addition to rights, the parties assumed specific mutual duties and obligations for site improvements. The major improvements and electrical facilities at Malin are jointly owned by the three parties. Equipment and property may not be disposed of or added to by any party without the concurrence of all three parties.

The design and construction of Malin was performed by a committee in which Pacific and Bonneville were active participants. A three-party agreement defines the Malin project as well as the equipment to be located there and the ownership of the equipment. The agreement provides for the maintenance and operation of Malin by Bonneville. Pacific pays its pro rata share of the substation's day-to-day costs. Bonneville operates and inspects electrical equipment solely owned by Pacific and located in Pacific's adjacent KFI.

The Government argues that "these agreements and contracts demonstrate a mutuality of interest, duties and functions that can only be described as association or affiliation." We agree. Bonneville was "associated" with Pacific within the meaning of that word as used in the subrogation clause in the insurance contract between Travelers and Pacific. Because of this holding, it is unnecessary to decide the meaning of "affiliated"; nor is it necessary to decide whether "affiliated" has a broader or narrower meaning than "associated", or whether Bonneville and Pacific were "affiliated" at the time of the loss.

Travelers waived its right of subrogation against the Government and this action is therefore dismissed.

This opinion shall constitute findings of fact and conclusions of law under Fed.R.Civ.P. 52(a).