**TRAVELERS INDEMNITY COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 75–1208.

United States Court of Appeals,
Ninth Circuit.

Oct. 7, 1976.

---

E. Richard Bodyfelt (argued), of Tooze, Kerr, Peterson, Marshall & Shenker, Portland, Or., for plaintiff-appellant.

Judith S. Feigin, Atty. (argued), Dept. of Justice, Washington, D. C., for defendant-appellee.

Before MOORE,* KILKENNY and SNEED, Circuit Judges.

SNEED, Circuit Judge:

This appeal comes before us for consideration of the narrow issue of what meaning is to be ascribed to the words "associated" and "affiliated" as used in the waiver of subrogation clause of the insurance policy involved herein. The court below, D.C., 393 F.Supp. 79, relying on Or.Rev.Stat. 744.165,[1] held that a federal government agency was "associated" with the insured within the meaning of this policy provision:

> All right of subrogation is hereby waived under this policy against any corporation, firm, individual or other entity to which or to whom coverage is afforded under this policy or against any corporation, firm, individual or other entity, parent or subsidiary to, owned or controlled by or affiliated or associated with [Pacific].

The subrogation case against the agency, therefore, was dismissed.

* Honorable Leonard P. Moore, Senior Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

1. Or.Rev.Stat. 744.165 provides:

The trial court's holding that the government agency and the insured were "associated" was induced by an erroneous view of the law. Therefore, to the extent it represents a finding of fact it is clearly erroneous, *see Ritter v. Morton*, 513 F.2d 942, 949 (9th Cir.), *cert. denied*, 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975), and to the extent it is a conclusion of law it is in error. We reverse and remand for trial on the issue of liability, holding that the court below erred in applying Or.Rev.Stat. 744.-165 and that the two entities are neither "associated" nor "affiliated."

I.

*Facts*

Plaintiff, Travelers Indemnity Company (Travelers), asserts it is a subrogee of Pacific Power & Light Company (Pacific) by reason of payments made by it pursuant to a casualty insurance policy. Travelers sought indemnity from the United States for payments made to Pacific, contending that the insured loss was caused by the negligence of the Bonneville Power Administration (Bonneville), an agency of the United States.

Pacific, Bonneville, the Bureau of Reclamation, and other public and private electrical utility companies jointly planned, constructed and operated the Pacific Northwest-Pacific Southwest Intertie (Intertie), an electric power transmission system designed to allow its members to utilize their resources and facilities to efficiently purchase and transmit surplus power.

The Malin Substation (Malin), located in Klamath County, Oregon, is an integral part of the Intertie, and was jointly planned and constructed by Pacific, Bonneville, the Bureau, and Portland General Electric (PGE). Parts of Malin are owned in common by Pacific, PGE, and Bonneville,

> Any person who solicits or procures an application for insurance shall in all matters relating to such application for insurance and the policy issued in consequence thereof be regarded as the agent of the insurer issuing the policy and not the agent of the insured.

while other parts are owned individually. By agreement Bonneville operates, inspects and maintains Malin, including some equipment located there and solely-owned by Pacific. Additionally, adjacent to the Malin Substation, Pacific owns and maintains property and equipment in the Klamath Falls Interconnection (KFI). In accordance with contractual arrangements, Bonneville operates and inspects certain facilities solely owned by Pacific and located in the KFI.

In 1960, several insurance companies jointly underwrote a comprehensive policy insuring Pacific against casualty losses in several western states, including Oregon. The insurance coverage was arranged by Marsh & McLennan (M&M), insurance brokers for Pacific. The policy's provisions were derived from M&M's "Standard Clause Manual (June 1958)," a manual of standard insurance policy clauses, and included the waiver of subrogation clause quoted above. In 1966, Travelers underwrote 100 per cent of the coverage but made no changes in the subrogation clause.

On June 5, 1969, an explosion and fire damaged Pacific's equipment in Malin and KFI. The damages occurred on equipment owned solely by Pacific. Travelers paid Pacific $1,657,545[2] and as subrogee filed this action to recover that amount from the United States, asserting that the damage was caused by Bonneville's negligence.

The case was tried on the segregated issue of whether the clause previously cited constituted a waiver of Traveler's right to subrogation. Determination of a waiver, in turn, is dependent on the meaning of "associated" and "affiliated" as used in the subrogation clause. The court below construed the terms broadly and held that Bonneville was "associated" with Pacific.

## II.

### Rules of Construction

■ Both parties agree that the Oregon statute, Or.Rev.Stat. 744.165, relied on by the court below, is inapplicable to the present case. The statute, in its present form, was not passed until after the rights of the parties became fixed.[3] The interpretation of the disputed subrogation clause, then, must derive from recognized standards of construction of insurance contracts within the jurisdiction of Oregon. *Teeples v. Tolson*, 207 F.Supp. 212 (D.Or.1962).

■ The general rule is the familiar one that an insurance policy must be construed most strongly against the insurer and reasonable doubt as to the meaning of the language of the policy must be resolved against the insurance company. *Phillips v. Equitable Life Assurance Society of United States*, 370 F.Supp. 456 (D.Or.1973). This rule, however, yields to the primary rule that policies of insurance, like other contracts, are to be construed so as to ascertain and declare the true intent of the parties. *Close-Smith v. Conley*, 230 F.Supp. 411 (D.Or.1964); *Waterman Steamship Corp. v. Snow*, 222 F.Supp. 892 (D.Or.1963), aff'd sub nom. *General Accident Fire & Life Assurance Corp., Ltd. v. Snow*, 331 F.2d 852 (9th Cir. 1964). Another maxim of interpretation applicable here is that a third party who is not a party to the contract is not usually entitled to a strict construction in his favor in determining whether the contract was made for his benefit. *Milchem, Inc. v. M. A. Smith Well Service, Inc.*, 351 F.Supp. 1307 (E.D.La.1972).

■ Freed of the binding force of Or. Rev.Stat. 744.165, we are able to avoid the rule of strict construction on another ground. It is that the rule has no applicability when the language is supplied by the insured, his agent or his broker. *Marine Transit Corp. v. Northwestern Fire & Marine Ins. Co.*, 2 F.Supp. 489 (E.D.N.Y.1933), aff'd and modified on other grounds, 67 F.2d 544 (2d Cir. 1933); *Sturgis National Bank v. Maryland Casualty Co.*, 252 Mich. 426, 233 N.W. 367 (1930); 1 Couch on Insur-

---

**2.** The loss amounted to $1,757,545; a $100,000 deductible was a part of the policy.

**3.** The statute in its present form was passed in 1971. Or.Gen.Laws, ch. 231, § 32. We do not decide its applicability to future cases of this sort.

ance § 15.77, at 812 (2d ed. 1967); *cf. Royal Indemnity Co. v. John F. Cawrse Lumber Co.*, 245 F.Supp. 707 (D.Or.1965). Pacific's agent, M&M, acted independently of Travelers in selecting the language at issue here. Under these circumstances the rule of strict construction is inapplicable. We, therefore, are entitled to construe the clause in question so as to give effect to the intention of the parties.

### III.

*The Meaning of "Affiliated or Associated"*

■ This entitlement does not solve the problem, however, because the clause is ambiguous. What it does is to free us to attach a meaning to the clause that is consistent, or at least not inconsistent, with such intention as was manifested by the parties and also in keeping with the purpose of the subrogation waiver. *See Close-Smith v. Conley, supra.*

■ Turning to the overt manifestations of the parties it is clear that no significance was attached by the parties to the presence of the words "associated" or "affiliated" in the waiver clause. M&M made a comparative analysis of the clause in question with another subrogation clause in which the word "associated" was omitted.[4] The analysis made no reference to this omission. This failure plainly suggests that M&M, Pacific's agent, did not view the word "associated" as a term which expanded the scope of the waiver. Nor are we prepared to believe that Pacific would have been indifferent to any such expansion.

This suggestion is supported by the fact that Pacific sought and received an endorsement modifying the waiver clause by specifically waiving Travelers' subrogation rights against Ebasco Services, Inc. (EBASCO), a corporation which was specifically empowered to act for and in behalf of Pacific in connection with the expansion of a

steam plant in Wyoming. Despite the extensive legal relationships between Pacific and EBASCO and the presence of the waiver of subrogation clause, it was deemed necessary to waive specifically Travelers' rights of subrogation against EBASCO. This indicates prudence and caution, to be sure; but it also indicates a strong probability that neither Pacific nor Travelers regarded the clause as having the meaning the United States now urges.

■ Nonetheless, we are not entitled to treat the terms "affiliated" and "associated" as surplusage. *See Fireman's Fund Insurance Co. v. Reliance Insurance Co.*, 291 F.Supp. 618 (D.Or.1968); *Close-Smith v. Conley, supra.* However, we should interpret them in a manner that reinforces and strengthens the purpose intended to be served by subrogation clauses. To do otherwise, in the absence of any manifestation of intent requiring a different approach, would be to make the assumption of irrationality an acceptable interpretive benchmark.

■ Clauses permitting the insurer to be subrogated to rights of the insured, resting as they do on equitable doctrines, are designed to permit the insurer to affix responsibility for the loss on the person who in equity and good conscience ought to pay it. 16 Couch on Insurance § 61.18, at 248 (2d ed. 1966). Waivers of subrogation primarily serve purposes of the insured. Most frequently waiver occurs to meet objections raised by those closely aligned financially with the insured. Though legally separate, subrogation against such closely aligned entities is "analogous to taking the money out of one pocket and putting it in the other." R. Horn, Subrogation in Insurance Theory and Practice 44–46 (1964).

The waiver provisions in this case certainly serve this purpose. We do not think they

---

4. The comparative analysis was conducted by M&M. The clause involved in the comparison read, "All right of subrogation is hereby waived under this policy against any corporation, firm, individual or other entity to which or to whom coverage is afforded under this policy, or

against any corporation, firm, individual or other entity, parent or subsidiary to, owned or controlled by or affiliated with the Insured." The differences noted in the analysis are not pertinent to this case.

were intended to serve other purposes such as insulating the United States, a recovery from whom can hardly be described as taking money out of another pocket of Pacific. The United States is not Pacific's other pocket, although Pacific is undoubtedly one of the many million pockets of the United States.

■ Expressed in terms of doctrines of interpretation we believe we should employ *ejusdem generis* in interpreting the terms "affiliated" and "associated." Thus, these terms will be interpreted so as to make them applicable to persons, things, or entities of the same general nature or class as those specifically enumerated, *viz.* corporations, firms, individuals or other entities, parents or subsidiaries, of, or owned or controlled by, Pacific.

■ So interpreted, the terms "associated" and "affiliated" envision an intimate business relationship in which significant aspects of financial and managerial control of the insured and the affiliate or associate are integrated. More is required than common ownership and a limited sharing of facilities which aids each owner to pursue his independent and separate objectives. Such case law as there is supports this interpretation. *See St. Paul Fire & Marine Insurance Co. v. Mayor's Jewelers of Ft. Lauderdale,* 465 F.2d 317 (5th Cir. 1972); *In re Marine Sulphur Transport Corp.,* 312 F.Supp. 1081 (S.D.N.Y.1970), *aff'd and modified on other grounds,* 460 F.2d 89 (2d Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972); *Old Colony Insurance*

*Co. v. Jeffery's Mill & Warehouse,* 146 F.Supp. 277 (N.D.Cal.1956).[5]

## IV.

### Application of Meaning of "Affiliated or Associated"

■ It follows, of course, that the United States, acting through Bonneville, is not an "associate" or "affiliate" of Pacific. While there existed some overlapping or common ownership and control, and mutuality of interest in the Malin Substation, the relationship between the entities consists of a common shared interest in certain property by separate independent entities each pursuing separate and distinct objectives. Pacific and Bonneville each retained their individual corporate structures and are not financially interrelated. The land upon which the Malin Substation is located was acquired separately by Pacific and certain portions were conveyed to PGE and Bonneville. The maintenance performed by Bonneville was reimbursed under the terms of a contract. Title in the damaged property remained vested in Pacific. These features, together with the fact that public power entities such as Bonneville have objectives and responsibilities apart from those of private power companies, make us confident that our conclusion is sound.

We, therefore, reverse the trial court and remand this case to the district court for a trial on the issue of liability of the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq.

REVERSE and REMAND.

---

5. A brief discussion of the cases is perhaps helpful.

In *St. Paul F. & M. Ins. Co. v. Mayor's Jewelers of Ft. Lauderdale, supra,* the issue was whether six wholly owned jewelry stores were associated with an insured who had purchased policies providing for coverage except when merchandise was in the custody of a dealer associated with the insured. Though the stores operated as separate entities for tax purposes, all the stores were held to be associated since as a practical matter they were one enterprise.

In *Marine Sulphur Transport Corp., supra,* the court indicated that an arm's length contractual relationship would not constitute an

association or affiliation. Evidence indicating intimate arrangements between the two concerns, manifesting control, was necessary.

*Old Colony Ins. Co. v. Jeffery's Mill & Warehouse, supra,* was an action by an insurer, as subrogee, to recover damages growing out of the loss of grain owned by the insured and destroyed by fire while being stored in defendant's warehouse. In deciding that the insured and defendant were associated, the court analyzed 16 factors indicating such extensive control and influence by the insured over the defendant that a subrogation payment by the indemnitor would constitute a direct loss to the insured.