NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1165n.06

No. 11-2022

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 09, 2012*
DEBORAH S. HUNT, Clerk

OMNICOM GROUP, INC.,                                      )
                                                         )
    Plaintiff-Appellee,                                  )          ON APPEAL FROM THE UNITED
                                                         )          STATES DISTRICT COURT FOR
v.                                                       )          THE   EASTERN   DISTRICT   OF
                                                         )          MICHIGAN
880 WEST LONG LAKE ASSOCIATES, et al.,                   )
                                                         )
    Defendant-Appellants.                                )          OPINION
                                                         )

Before: COLE and DONALD, Circuit Judges; SARGUS, District Judge.[*]

DONALD, Circuit Judge.  Plaintiff-Appellee Omnicom Group, Inc. ("Omnicom"), guarantor

of tenant BBDO Detroit, LLC ("BBDO Detroit"), sought a declaratory judgment against BBDO

Detroit's landlord, Defendant-Appellant 880 West Long Lake Associates, LLC ("880 West")

regarding a twenty-year commercial lease ("the Lease").  Omnicom sought a declaration that the

lease was validly terminated.  880 West filed a counterclaim seeking a declaration that the Lease

remains in full force and effect. Omnicom filed a motion for partial summary judgment.  After

denying Omnicom's motion on the grounds that two terms in the Lease are ambiguous, the district

court held a bench trial.  The district court entered judgment in favor of Omnicom, finding that the

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District
of Ohio, sitting by designation.

Lease was validly terminated. 880 West timely appealed the district court's judgment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

I.

Plaintiff Omnicom owns BBDO Detroit, formerly known as Ross Roy Communications, Inc. Omnicom is the guarantor of BBDO Detroit's leasehold obligations. In 1998, BBDO Detroit negotiated with 880 West to enter into a 20-year commercial lease to occupy a new office building near Chrysler Corporation's ("Chrysler") corporate headquarters. BBDO Detroit needed office space near Chrysler because BBDO Detroit was Chrysler's primary advertising agency and because Chrysler was essentially BBDO Detroit's only client. Based on the Lease negotiations, Bank of America approved 880 West for a loan to build a 180,565 square-foot building. The Lease contained a Termination Condition clause, Section 3.3(a), which, in the preliminary lease drafts, permitted BBDO Detroit to terminate the Lease in the event that they "no longer provide any advertising services to *Chrysler Corporation* and/or its affiliates."

While 880 West and BBDO Detroit were negotiating the Lease, Chrysler and the German automobile company Daimler-Benz AG publicly announced they were pursuing a merger to form a new entity, "DaimlerChrysler AG." No mention of the merger, however, was made in the preliminary drafts of the Lease. On December 2, 1998, 880 West revised the Termination Condition to account for the expected Daimler-Chrysler merger by replacing "*Chrysler Corporation* and/or its affiliates" with "*Daimler Chrysler AG* and/or its affiliates," but it did not provide BBDO Detroit

with an explanation of the change or its impact on the negotiated intent of the Termination Condition. Additionally, the Lease did not include a precise definition for the term "affiliates." Less than one month after the change to the Termination Condition, the Lease was executed on December 23, 1998 and commenced on January 1, 2000.

In 2007, during the Lease term, DaimlerChrysler AG transferred its Chrysler business, then called Chrysler LLC, to Cerberus Capital Management, L.P.. Subsequently, DaimlerChrysler AG changed its name from "DaimlerChrysler AG" to "Daimler AG." In April 2009, Chrysler filed for bankruptcy, and all of its assets were sold to a new entity named Chrysler Group LLC, which was incorporated by the Italian car company Fiat. The owners of Chrysler Group LLC consisted of Fiat, the United Auto Workers Union, and the United States and Canadian governments. Chrysler Group LLC assumed Chrysler LLC's contract with BBDO Detroit.

In July 2009, Chrysler Group LLC's Senior Vice President Scott R. Garberding provided BBDO Detroit six-month's notice that effective January 29, 2010, it would be terminating its contract with BBDO Detroit for advertising services. On April 8, 2010, BBDO Detroit notified 880 West that it was exercising its right to terminate the Lease early, effective October 8, 2010, in accordance with Section 3.3(a). 880 West subsequently notified its lender, Bank of America, that BBDO Detroit "lost its contract with Chrysler, which gives them the right to terminate the 880 lease." In talks with BBDO Detroit, however, 880 West refused to recognize that the Termination Condition was satisfied. As a result, Omnicom sought a declaration that BBDO Detroit validly terminated the Lease and that BBDO Detroit's only obligation was to pay the contractual early

termination fee. 880 West filed a counterclaim seeking a declaratory judgment that Omnicom may not terminate the Lease early and that Omnicom must continue to meet BBDO Detroit's lease obligations.

Omnicom filed a motion for partial summary judgment. On July 20, 2011, the district court denied the motion, finding that the terms "affiliates" and "Daimler Chrysler AG" in the Lease's Termination Condition were ambiguous. After a bench trial, the district court again held that the terms were ambiguous but nonetheless found that Omnicom did in fact satisfy the Termination Condition of the Lease. Defendant 880 West now appeals the district court's judgment.

## II.

We review a district court's contract interpretation de novo and its findings of fact under the clear error standard. *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 599 (6th Cir. 2009). Because jurisdiction in this case is based on diversity of citizenship, we will apply the substantive law of Michigan. *Hickson Corp. v. Norfolk Southern Railway Co.*, 260 F.3d 559, 566 (6th Cir. 2001).

880 West argues that the district court erred in (1) finding that the terms "affiliates" and "Daimler AG" were ambiguous as used in the Lease and (2) in considering extrinsic evidence to make that determination. 880 West further contends that the district court committed reversible error by ignoring the integration clause in the Lease. In the alternative, 880 West argues that even if the lease terms were ambiguous, the district court committed legal and factual errors in the interpretation and application of the terms. In response, Omnicom asserts that the district court correctly consulted

extrinsic evidence in finding ambiguity, and that, viewed in context, the terms were indeed ambiguous and that the evidence at trial amply supports the district court's interpretation of both terms.

Under Michigan law, "[t]he cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." *McIntosh v. Groomes*, 198 N.W. 954, 955 (Mich. 1924). To that end, courts often bear the responsibility of determining what the parties intended by specific terms within a contract. Terms are deemed either unambiguous or ambiguous. "Where a contract is unambiguous on its face, extrinsic evidence is inadmissible because no outside evidence can better evince the intent of the parties than the writing itself." *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 812 (6th Cir. 2007) (citing *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005)). According to the parol evidence rule, a court may not use extrinsic evidence to interpret contract language that is unambiguous. *Shay v. Aldrich*, 790 N.W.2d 629, 641 (Mich. 2010). Only when terms within a contract are deemed ambiguous may a court look to outside evidence to determine their meaning. *Sault Ste. Marie*, 475 F.3d at 812.

A.

A contract term's ambiguity can be either patent or latent. *Shay*, 790 N.W.2d at 641. Patent ambiguities clearly appear on the face of the document. *Id*. However, a latent ambiguity is not readily apparent from the language of the contract, "but instead arises from a collateral matter when

the document's terms are applied or executed." *Id*. Latent ambiguities exist when contract language "is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among [two] or more possible meanings." *McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340, 344 (Mich. 1964) (quoting *Black's Law Dict.*, 4th ed.); *see also Shay*, 487 Mich. at 668. Often a latent ambiguity will only be resolved when the term is applied in context. *Sault Ste. Marie*, 475 F.3d at 812.

Here, the district court did not distinguish between patent or latent ambiguities in finding the terms "affiliates" and "Daimler Chrysler AG" ambiguous. However, the district court cited case law finding ambiguity where provisions are capable of conflicting interpretations, and, given the need to consult extrinsic evidence, the ambiguity is likely latent as opposed to patent. Although Omnicom argues that the ambiguities are both patent and latent, its interpretation is inconsistent with its argument that the district court properly considered extrinsic evidence; "resort to extrinsic evidence is unnecessary to detect a patent ambiguity," but, the detection and resolution of a latent ambiguity "require[s] consideration of factors outside the instrument itself." *City of Grosse Point Park*, 702 N.W.2d at 113 (quoting *McCarty*, 127 N.W.2d at 344). Thus, if the terms are ambiguous and the district court considered extrinsic evidence, the court must have considered the terms latently ambiguous and not patently ambiguous.

880 West maintains that *Black's Law Dictionary*, the Michigan Business Corporation Act, and Michigan case law have routinely concluded that the term "affiliates" is unambiguous. 880 West asserts that the term "affiliates" always includes sibling corporations, and, as such, would mean

that all Omnicom-owned companies around the world could not continue to do business with any "Daimler Chrysler AG" entity if the Lease is to be validly terminated. While 880 West is correct that courts often look to other sources, such as *Black's Law Dictionary*, to aid in interpretation, courts also consistently consider the context in which a term is used.

*Black's Law Dictionary* defines affiliate as "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Black's Law Dictionary* (9th ed. 2009). The Michigan Business Corporation Act defines affiliate as "a person who directly, or indirectly through [one] or more intermediaries, controls, is controlled by, or is under common control with a specified person." Mich. Comp. Laws § 450.1776(1). However, as both parties recognize, case law is not so quick to strictly define the term, instead choosing to rely on context.

In *Wyrembelski v. City of St. Clair Shores*, the Michigan Court of Appeals described the many different interpretations of the term "affiliate" as applied across varying jurisdictions according to the facts of each case. 553 N.W.2d 651, 653-54 (Mich. Ct. App. 1996). The court discussed the following cases in its analysis with regard to the term "affiliate." For instance, the Ninth Circuit found that "[m]ore is required than common ownership" and despite "overlapping or common ownership and control, and mutuality of interest . . . the entities were not affiliated[.]" *Id*. at 653 (citing *Travelers Indem. Co. v. United States*, 543 F.2d 71, 76 (9th Cir. 1976)). The Southern District of New York rejected the idea that "'a simple and arm's length' contractual relationship between two corporations made them 'affiliated'" *Id*. (quoting *In re Marine Sulpher Transp. Corp.*,

312 F. Supp. 1081, 1103 (S.D.N.Y. 1970). The Louisiana Court of Appeals decided not to extend the scope of the term "affiliates" to a husband's corporation where he was the sole shareholder despite the agreement's language releasing "his predecessors, affiliates, insurers, representatives, agents, successors, assigns and employees." *Id*. at 653-54 (citing *McCall v. Cameron Offshore Boats, Inc.*, 635 So.2d 263 (La. App. 3 Cir. 1994). Additionally, the Northern District of Illinois's decision in *Precision Devices Corp. v. Intermedics, Inc.*, 766 F. Supp. 666, 668 (N.D. Ill. 1991), stands for the proposition that *the circumstances surrounding a contract* will aid in the interpretation of the word "affiliate." (emphasis added).

The aforementioned examples, coupled with the definitions from *Black's Law Dictionary* and the Michigan Corporations Act, overwhelmingly convey that there is no one definition of "affiliates," and it is well known that "[a] contract is ambiguous if its words may reasonably be understood in different ways." *UAW-GM Human Res. Ctr. v. KSL Recreations Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) (internal quotation marks and citation omitted). As such, the district court did not err in finding that the term "affiliates" is ambiguous, in the context of the Lease, and it proceeded to interpret the term with the assistance of parol evidence.

As for the term "Daimler Chrysler AG," in denying Omnicom's motion for summary judgment, the district court found that the term could in fact mean, as Omnicom alleges, that the term refers only to the Chrysler and its brands. *See Sault St. Marie*, 475 F.3d at 812 ("the burden is on the party alleging the ambiguity to present an interpretation of the contract that is equally as plausible as the common sense interpretation."). The district court found that Omnicom's

interpretation was indeed plausible, and thus appropriately denied summary judgment so that the issue could be resolved at trial.

B.

880 West argues that because the Lease contained an integration clause, the district court was not permitted to consult extrinsic evidence, including prior or contemporaneous negotiations. This argument is unpersuasive. Parties include integration clauses into a contract to indicate that the final written agreement is the "exclusive basis for determining their intentions." *UAW-GM*, 579 N.W.2d at 416 (quoting 3 Corbin, Contracts, § 577, p. 401). The existence of an "integration clause does not preclude the consideration of extrinsic evidence[.]" *Karibian v. Village Green Management Co.*, 2010 WL 1138028, at *4 (Mich. Ct. App.); *see also Hesse v. Superior Bus. Forms, Inc.*, 2008 WL 441603, at *3 (Mich. Ct. App.) ("if a contract contains an integration clause, extrinsic evidence may be necessary, and is permissible, to assist in the interpretation of an ambiguous contract term.") (citing 6 Corbin, Contracts (Revised ed), § 578, p. 119.). Thus, the district court did not commit clear error by consulting extrinsic evidence even though the Lease contained an integration clause.

C.

Lastly, 880 West's alternative argument that the district court committed legal and factual errors in interpreting the terms also fails. A "court must consider the extrinsic evidence to determine if there exists an ambiguity and then, if an ambiguity does exist, the court must consider extrinsic evidence to resolve that ambiguity." *Sault St. Marie*, 475 F.3d at 812. The district court relied on

witness testimony and documentary evidence to interpret the ambiguity. The district court credited the testimony of Omnicom's representatives, who indicated that they never would have agreed to the lease terms if "affiliates" and "Daimler Chrysler AG" were to be read as expansively as 880 West argues. The district court also found that based on the testimony of 880 West's counsel and its principal, the term "affiliates" only referred to those companies to which BBDO Detroit could "shift the work" that it had historically done for Chrysler. Further, the district court found that the weight of the evidence supported a finding that the change from "Chrysler Corporation" to "Daimler Chrysler AG" was not a change in scope, but rather a change in name only. Moreover, the district court did not believe that 880 West would have notified its mortgage lender that Omnicom was exercising its right to terminate the Lease if Omnicom did not actually have a right to terminate the Lease.

This court will not disturb the credibility findings of the district court unless clear error on the part of the district court is evident. *Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999) ("When factual findings rest upon credibility determinations, this Court affords great deference to the findings of the district court.") A review of the record does not reveal that the district court erred in interpreting and applying the terms "affiliates" and "Daimler Chrysler AG." While the term "affiliates" can mean sibling corporations as 880 West argues it does, another reasonable interpretation of the term in the context of the Lease is that it only refers to other Omnicom-owned companies that could do advertising work for Chrysler. For 50 years, BBDO Detroit handled all of the advertising work for Chrysler and its brands - Dodge, Plymouth, Eagle and Jeep. It is not

unreasonable to find that a lease (1) executed in Michigan, (2) relating to property in Michigan, (3) where the parties are Michigan residents, and (4) the entity in which the Termination Condition referred is also in Michigan, does not encompass the business of Omnicom and Daimler AG companies around the world that had no involvement in the negotiation or execution of the Lease.

Once a contract term is determined to be ambiguous, its interpretation becomes a question fact, *Port Huron E. Ass'n v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323 (Mich. 1996), and the district court is in the best position to judge the credibility of the witnesses. *See Schroyer*, 197 F.3d at 1173. The preponderance of the evidence showed that the terms at issue were ambiguous and that the parties did not intend as expansive a scope of the terms as 880 West suggests. 880 West contends that any company controlled or owned by DaimlerChrysler is subject to the term "affiliates" as it relates to "Daimler Chrysler AG." However, the district court found that this interpretation was too expansive, and 880 West lacked credible evidence to support such an assertion. Importantly, the district court also held that the term "affiliates" was not so expansive as to include "the entities which acquired Chrysler following its 'divorce' from Daimler and its subsequent bankruptcy." This finding would indicate that not even Fiat, the company that controlled Chrysler Group LLC after it emerged from bankruptcy in 2009, is an affiliate as the term relates to the Lease. Such a finding is supported by the history of dealings between BBDO Detroit and Chrysler, as well as the testimony of Howard Wendy, Omnicom's broker, that Chrysler was the only automobile company that was discussed regarding the Lease.

Further, emails sent by BBDO Detroit representatives showed that the company actively directed all companies to cease advertising business for Chrysler. Although this may imply that the term "affiliates" encompasses companies beyond the scope of those that Omnicom argues are affiliates for purposes of the Lease, the district court found that all Omnicom-owned companies did in fact terminate all *advertising* business with *Chrysler*.[2] The fact that all advertising business for Chrysler ceased prior to the effective date of termination of the Lease supports the district court's determination that "affiliates" and "Daimler Chrysler AG" only referred to companies providing advertising services for Chrysler. Additionally, because 880 West was responsible for the last-minute change of name to "Daimler Chrysler AG," the district court was properly construed the ambiguous term against it as the drafter. *See United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399, 409 (6th Cir. 2004). Thus, the district court did not commit clear error in finding that "affiliates" did not mean all Omnicom-owned companies and that "Daimler Chrysler AG" did not mean all companies under the Daimler umbrella.

### III.

Given the foregoing, we **AFFIRM** the district court's finding that Omnicom validly terminated the Lease with 880 West.

---

[2]Two Omnicom-owned companies continued doing business with Chrysler, but they were not providing advertising services.