*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0272P (6th Cir.)
File Name: 03a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MICHAEL B. HUSS,
        *Plaintiff-Appellant,*

        *v.*

THE KING COMPANY, INC.;
LAKE MICHIGAN
CONTRACTORS, INC.,
        *Defendants-Appellees.*

No. 02-1010

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 98-00366; 00-00043—Wendell A. Miles,
District Judge.

Argued: June 11, 2003

Decided and Filed: August 5, 2003

Before: MOORE and GIBBONS, Circuit Judges;
SCHWARZER, Senior District Judge.[*]

———————————

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

———————————

## COUNSEL

**ARGUED:** Joseph Kelly Carley, JAQUES ADMIRALTY LAW FIRM, Detroit, Michigan, for Appellant. Robert D. Nienhuis, GOLDSTEIN & PRICE, St. Louis, Missouri, Paul D. Galea, FOSTER, MEADOWS & BALLARD, Detroit, Michigan, for Appellees. **ON BRIEF:** Joseph Kelly Carley, Judith A. Schornack-Smith, JAQUES ADMIRALTY LAW FIRM, Detroit, Michigan, for Appellant. Robert D. Nienhuis, GOLDSTEIN & PRICE, St. Louis, Missouri, Paul D. Galea, FOSTER, MEADOWS & BALLARD, Detroit, Michigan, for Appellees.

———————————

## OPINION

———————————

WILLIAM W SCHWARZER, Senior District Judge. This is an appeal from an adverse judgment after trial in an action brought by Michael Huss for injuries sustained while employed by defendant King Company, Inc. (King). On May 3, 1995, Huss, together with three other King employees, attempted to retrieve a work boat from the yard of codefendant Lake Michigan Contractors (LMC). As the boat was being hoisted by a crane off its cradle, Huss crawled underneath the boat to remove a scrap of rope from the propeller shaft. While he was attempting to remove the rope, one of the lines securing the boat to the crane came loose, causing it to fall on Huss. He sustained a compression fracture of the fifth lumbar vertebra and a posterior left rib fracture. After spending one night in the hospital, he was released to home. He returned to work approximately one month after the accident, performing duties that did not require heavy lifting, until August 1997. At that time, he ceased reporting to work, and in December 1997, he terminated his employment with King. In May 1998, Huss

filed this action alleging claims against King under the Jones Act, 46 U.S.C.§ 688 *et seq.*, and for unseaworthiness, and against LMC for unseaworthiness and negligence. In January 2000, he filed another action against King alone to recover maintenance and cure. The two actions were consolidated. Following a bench trial, the court awarded Huss damages of $30,234.73; after reducing this amount by sixty percent for Huss's comparative fault and crediting King with overpayment of maintenance and cure, it entered a take-nothing judgment. This appeal followed. The district court had jurisdiction under 28 U.S.C. § 1333, and we have jurisdiction under 28 U.S.C.§ 1291. Because the rulings of the district court were not clearly erroneous and did not abuse its discretion, we affirm the judgment.

## DISCUSSION

## I. THE CLAIM AGAINST KING

*A. The Maintenance and Cure Issue*

In July 2000, Huss moved for partial summary judgment on his claim for maintenance and cure.[1] The court found that King had discontinued payment of maintenance and cure on January 1, 1998. It held that because Huss had presented evidence that he had not reached maximum cure and King had failed to raise a triable issue, Huss was entitled to summary judgment on liability, leaving the amount due, if any, to be determined. A pretrial order entered in May 2001

---

[1] A seaman who is injured while in service of a vessel is entitled to maintenance and cure at the expense of the vessel owner. Maintenance is a subsistence allowance designed to provide the seaman with compensation sufficient to pay for his food and lodging until the time of maximum cure. Cure is the employer's obligation to pay for medical expenses for an injured seaman. The obligation to pay maintenance and cure continues until the seaman is cured or, if there is permanent impairment, until he reaches the point of maximum medical recovery. *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law* 369, 372, 375 (3d ed. 2001).

stated the amount of maintenance and cure due to be a disputed issue.

In July and August 2001 the case went to trial before the district judge. At the conclusion of the trial, the court delivered oral findings stating, among other things, that new evidence had come to light leading the court to determine that maximum cure had been reached prior to January 1998.[2] In subsequent written findings, the court stated that the prior entry of summary judgment for Huss on the issue of maintenance and cure was "essentially meaningless if by the time of the ruling King had already paid all of the maintenance and cure to which [Huss] was entitled." It held that because Huss reached maximum cure sometime between September and December 1997, King properly discontinued maintenance and cure payments as of January 1998. King had, however, as the court noted, made additional payments following the court's earlier ruling for the years 1998, 1999, and 2000. The court found that King was entitled to credit for those sums toward any judgment on the unseaworthiness and Jones Act claims.[3] Huss then filed a post-trial brief, much of it devoted to the maintenance and cure issue. In November 2000 the court issued its Supplemental Order Regarding Maintenance and Cure addressing the evidence adduced at

---

[2] The court found, *inter alia*, that Huss provided false information during a medical history leading the court to question his credibility. Huss vigorously challenges the court's credibility determination but offers nothing compelling a finding of clear error. *See Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) ("We are generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor."). On the merits, the court also found that medical opinion that Huss would have benefitted from a second surgery was lacking, partially based on the fact that the physician who performed Huss's surgery, Dr. Reynaldo Castillo, expressed the opinion in November 1997 that pain may be something with which he will have to live.

[3] The court did not require Huss to repay any amounts he had received.

trial and not previously presented that led the court to find that maximum cure had been reached before January 1998, as well as the arguments on the issue advanced by Huss.

Huss's principal argument on appeal is that the court erred in revoking its partial summary judgment determining that maintenance and cure had not been reached by September 2000. Rule 56(d) authorizes the entry of partial summary judgment. Fed. R. Civ. P. 56(d). It states that if summary judgment is rendered on less than an entire case and a trial on the remaining claims is necessary, the court

> shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

We agree with Judge Newman's analysis of Rule 56(d) in *Leddy v. Standard Dry Wall, Inc.*, 875 F.2d 383 (2d Cir. 1989), in which he stated:

> Once a district judge issues a partial summary judgment order removing certain claims from a case, the parties have a right to rely on the ruling by forbearing from introducing any evidence or cross-examining witnesses in regard to those claims. If, as allowed by Rule 54(b),[4]

---

[4] Rule 54(b) provides that in the absence of a direction to enter judgment on one of several claims presented in an action, "any order . . . which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . and the order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims." Fed. R. Civ. P. 54(b).

the judge subsequently changes the initial ruling and broadens the scope of the trial, the judge must inform the parties and give them an opportunity to present evidence relating to the newly revived issue. Failure to do so might in some circumstances cause substantial prejudice.

875 F.2d at 386.

Here, the district judge informed Huss of the change of his initial ruling and gave him an opportunity in post-trial briefing to argue that he was entitled to continued payment of maintenance and cure after January 1998. Although the court's change of its ruling did not occur until after trial, it was based on the damage evidence relevant to maintenance and cure presented at trial. Counsel on brief made no attempt to show that the post-trial change of the ruling prejudiced his trial presentation. At oral argument he conceded that all of the evidence relevant to maintenance and cure had been presented in support of Huss's damage claim and that he knew of no questions he would have asked witnesses had he known of the court's revised ruling. We conclude that the district court did not commit error and that its action did not prejudice Huss.

### B. Allocation of Comparative Negligence

Huss contends that the district court's allocation to him of sixty percent comparative negligence was clearly erroneous. Our review of allocation of fault is for clear error. *Phillips Petroleum Co. v. Stokes Oil Co.*, 863 F.2d 1250, 1255 (6th Cir. 1988). The court's determination was based on extensive findings, including that Huss and his coworkers had a duty to ensure the operation was performed safely, that Huss crawled under the boat without having been instructed to do so and later admitted that it was stupid, and that he remained under the boat when his supervisor crawled out from underneath the boat. Huss argues a different interpretation of the essentially undisputed facts but he fails to show that the court's finding was clearly erroneous.

## C. Damages

As noted above, the district court gave King credit against the damage award for the sums previously paid for maintenance and cure to which, under the court's decision, Huss was not entitled. Huss does not contend that the court lacked the authority to do this. Instead he argues that the claim for credit was an affirmative defense which was not pleaded as required by Rule 8(c), or raised in the pretrial order, and was therefore waived. Fed. R. Civ. P. 8(c). We will assume for present purposes that the credit claim was an affirmative defense. "[T]he purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (citing *Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 350 (1971)). If a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. *Id.* Huss has not shown how he was prejudiced by King's failure to plead the claim as an affirmative defense. The question whether Huss was entitled to funds paid after January 1998 was directly implicated in King's opposition to Huss's claim for maintenance and cure after January 1998, which was litigated. Moreover, Huss has pointed to no evidence or argument he would have offered in opposition to the credit claim had it been pleaded. *Id.*[5]

Huss further contends that the damage awards were clearly erroneous in their insufficiency. He argues that the court ignored evidence of pain and suffering and of egregious pain precluding past and future work. The court found Huss to be an outwardly healthy person, in no obvious distress, who

---

[5]Huss contends that the district court abused its discretion in denying prejudgment interest. Because we uphold the district court's decision to credit King with the overpayments of maintenance and cure, resulting in a take-nothing judgment, the prejudgment interest claim is moot.

currently suffers from no serious back disorder and whose physical limitations are self-imposed rather than medically required. He further found that the evidence clearly showed that Huss was able to return to work for over two years following the accident with his earning capacity undiminished. While different interpretations of the evidence may be reached, Huss has not shown the court's findings to be clearly erroneous. *See* Fed. R. Civ. P. 52(a); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994) (stating that damages present a question of fact subject to review under the clearly erroneous standard).

## II. THE CLAIM AGAINST LMC

The district court granted summary judgment for LMC on all claims. It dismissed the Jones Act claim because it was undisputed that Huss was not an employee of LMC. It dismissed the unseaworthiness and negligence claims, finding that it was undisputed that King took the boat under a bareboat charter and that there was no evidence from which a trier of fact could find a defective condition pre-existing the charter. Our review of summary judgment is *de novo*. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910 (6th Cir. 1995).

Huss challenges the unseaworthiness ruling, arguing that the owner of a vessel is under an absolute duty to furnish a seaworthy vessel. However, the owner of a vessel under a demise (or bareboat) charter is liable only for unseaworthiness that pre-existed the charter. *Kerr-McGee Corp. v. Law*, 479 F.2d 61, 63 (4th Cir. 1973). "[W]hen the owner of a vessel enters into a demise charter, he surrenders all possession and control of the vessel to the charterer. Since he no longer has the right to control the use of the vessel, he is no longer charged with the duties and liabilities that arise out of its ownership." *Id.*; *see also, Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981); Schoenbaum at 348-49. Because the court found the evidence insufficient to support a finding that the boat was caused to fall by a failure

of the existing lines on the boat, this claim was properly dismissed.

Huss also challenges the dismissal of the negligence claim, arguing that the failure of the rigging raised a genuine issue as to whether LMC turned over a boat in a dangerous condition. But the court found that the evidence did not support a finding that the ropes or lines furnished with the boat rendered it dangerous and that it was the manner in which King's employees performed their work that created the dangerous situation. This claim was therefore properly dismissed.

## CONCLUSION

We have carefully considered all of Huss's contentions, including those not specifically discussed in this opinion, and find them to be without merit. We therefore AFFIRM the judgment of the district court.