NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0721n.06
Filed: August 17, 2005

No. 05-1155

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| E. STEPHEN DEAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| THOMAS K. BYERLEY, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

PER CURIAM. Stephen Dean argues that Thomas Byerley retaliated against him for exercising his First Amendment rights while picketing Byerley's residence. A jury heard Dean's allegations and rejected them, and Dean now challenges several of the trial court's evidentiary and procedural rulings. Finding no reversible error, we affirm.

I.

Dean graduated from the Thomas Cooley School of Law, and in December 2000 he submitted an application for admission to the State Bar of Michigan. The application called for Dean to list all of the places he had resided in the course of his then-60-year lifetime. Dean became concerned that this application would be considered incomplete because he was unable to identify

each of his places of residence. Not wishing to prejudice his application, Dean expressed his concern to the Executive Director of the Bar.

This conversation did not alleviate Dean's concerns and (at least from Dean's perspective) apparently exacerbated them. In March 2001, Dean began picketing about his application and the treatment he had received from the employees of the Michigan Bar. In his first protest, Dean hired two individuals to assist him at $10 apiece, and together the three of them picketed the Michigan State Bar Building.

Dean next picketed the home of Thomas Byerley, the Regulation Counsel and Director of the Professional Standards Division for the Michigan Bar. Members of the Division, which oversees the Michigan Bar's Character and Fitness Department, investigate the backgrounds of all State Bar applicants and assess whether they have the necessary character and fitness to practice law in Michigan. The Department's findings are submitted to the Board of Law Examiners, which has authority to make the ultimate admission decisions about each application.

On the morning of March 27, 2001, Dean, once again accompanied by two for-hire picketers, arrived at the Byerley residence. Because no sidewalk runs in front of Byerley's home, Dean and his associates picketed on the public street in front of the house and, according to Dean, solely on the part of the street in front of that home. According to Byerley, the picketers also demonstrated on his property.

A confrontation occurred when Byerley left his home for work that morning. According to Dean, Byerley threatened to have Dean arrested for illegal picketing, drove his car directly at Dean and told him that due to his illegal picketing he would never practice law in the State of Michigan. After Byerley went to work, Dean and the two other protesters left. Since then, Dean has not picketed Byerley's home or the State Bar Building.

Two days after this confrontation, Byerley sent a letter to Dean. In full, the letter reads:

As you know, you and two other individuals were outside of my private residence on Tuesday, March 27, 2001 carrying signs. Although you have a right to exercise your First Amendment rights on public property, you do not have that right on private property.

On March 27 I verbally told you that you were on private property and that if you did not immediately leave I would call the police. This letter memorializes that statement. You are put on formal notice that you are never welcome on my private property and that if you trespass again I will ask that you be arrested.

Similarly, you are notified that you are not to enter the private property of any other State Bar of Michigan employee or officer.

JA 326.

Dean filed a *pro se* complaint against Byerley seeking $2 million. Dean brought the claim in the United States District Court for the Western District of Michigan, contending that Byerley: (1) had violated his First and Fourteenth Amendment rights and 42 U.S.C. § 1983 by threatening to arrest Dean or retaliate against him for his residential picketing; (2) had committed a state-law assault by driving his car at Dean; and (3) had committed state-law libel by sending a letter to Dean claiming he had been trespassing.

Byerley moved for summary judgment on the free-speech claim, and the district court granted it, concluding that Dean was not acting under color of state law. We reversed and remanded for a trial, concluding that Dean had "created a genuine issue of material fact as to whether Byerley acted under color of state law." *Dean v. Byerley*, 354 F.3d 540, 544 (6th Cir. 2004). After a three-day trial, the jury rejected Dean's free-speech claim as well as his state-law claims.

## II.

On appeal, Dean does not challenge the sufficiency of the evidence to support the jury's verdict. He instead complains about a number of evidentiary and procedural rulings.

He first argues that the district court should not have asked the jury to decide whether Byerley acted under color of state law when he threatened to take adverse action against Dean's bar application if Dean continued picketing in front of his house. As Dean sees the matter, the "color of state law" inquiry is a question of law that a district judge must decide. That, however, is not invariably the case. "Although it is possible to determine . . . whether a person acted under color of state law as a matter of law, there may remain in some instances unanswered questions of fact regarding the proper characterization of the actions for the jury to decide." *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003) (en banc) (quotations omitted). In the initial decision in this action, the court decided that this was just such a case given Dean's and Byerley's divergent accounts of what happened on the morning of March 27th when Dean picketed the Byerley residence. The court therefore "conclude[d] that Dean created a genuine issue of material fact as to whether Byerley acted under color of state law." *Dean*, 354 F.3d at 544. In the aftermath of this

conclusion, it was not only proper, but indeed quite necessary, for the district court to submit the "color of state law" question and the competing factual allegations surrounding it to the jury.

In a related contention, Dean argues that the substance of the "color of state law" jury instruction was erroneous. The district court used the model jury instruction from 3B O'Malley, Federal Jury Practice & Instructions, Civil, § 165.40 (5th ed.). As Dean did not object to this instruction at trial, he has the burden of showing plain error on appeal. *See* Fed. R. Civ. P. 51(d)(2). Not only is it improbable that a district court's reliance on model jury instructions would amount to plain error but Dean also has offered no meaningful authority to show that the use of these model instructions was in fact mistaken.

Dean next argues that he should receive a new trial based on the opening statement of Byerley's counsel. In his opening statement, Byerley's counsel mentioned two areas of anticipated evidence: Dean's picketing at the residence of a law school professor and Dean's allegations of emotional distress arising from separate incidents that had occurred in Missouri. After the opening statements, Dean objected to the admissibility of this evidence and to the references to these incidents in Byerley's opening statement. The district court accepted Dean's admissibility argument, excluded the proposed evidence and instructed the jury that the "opening statement was not evidence in this case," that "there will be no evidence of other lawsuits brought by Mr. Dean," and that the jury "must decide the case based solely on the evidence in this case." JA 106–07. The jury is presumed to have followed these instructions, *see Shanklin v. Norfolk Southern Ry. Co.*, 369 F.3d 978, 991 (6th Cir. 2004), and at any rate Dean has failed to show that any improper arguments "consistently permeated the entire trial from beginning to end," *Sutkiewicz v. Monroe County*

*Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997). For many of the same reasons, Dean's argument that the

district court should have granted his motion for a mistrial after the opening statement fails. *See*

*Beck v. Haik*, 377 F.3d 624, 643 (6th Cir. 2004) ("In appeals of civil cases, grants of mistrial on the

basis of a single episode of improper questioning or argument have been rare.").

     In another challenge to the opening statement, Dean contends that the district court erred by

allowing Byerley's counsel to state that the evidence would show that Dean came onto Byerley's

property on March 27, 2001. According to Dean, this amounted to the introduction of "a new [ ] and

previously unasserted affirmative defense," Dean Br. at 46—namely, trespass—that should have

been included in the pleadings under Fed. R. Civ. P. 8(c). The district court found that Dean "had

ample notice" of the evidence and that Dean had "failed to show how he was prejudiced by the

admission of Byerley's testimony on that issue." D. Ct. Op. at 8.

     Even assuming for the sake of argument that Byerley's decision to raise this issue during

opening statements amounts to the assertion of an affirmative defense, a point we need not decide,

the parties' long-standing dispute over this evidence demonstrates that Dean cannot plausibly claim

he was either surprised or prejudiced by this reference during opening statement rather than in the

answer. "It is well established [ ] that failure to raise an affirmative defense by responsive pleading

does not always result in waiver." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th

Cir. 1993). "The purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense

and a chance to rebut it." *Huss v. King Co.*, 338 F.3d 647, 651 (6th Cir. 2003) (quotation and

brackets omitted). "If a plaintiff receives notice of an affirmative defense by some means other than

pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any

prejudice." *Id.* In his complaint, Dean alleged that he "never entered [Byerley's] personal property." Am. Compl., ¶ 8, JA 32. In the count containing the defamation claim he again alleged that he "had not trespassed on Defendant's property." Am. Compl., ¶ 38, JA 34. Byerley denied these allegations in his answer, stating that "[a]lthough Plaintiff does have the right to peaceably picket on public property, he does not have that right on private property." Answer, ¶ 21, JA 43. The prior appellate opinion in this case acknowledged the existence of a dispute over this evidence: "Dean alleges that he and the hired individuals only picketed on the street in front of Byerley's residence. Byerley, on the other hand, alleges that Dean and the hired individuals also picketed on Byerley's private property." *Dean*, 354 F.3d at 544–45. From start to finish, in other words, one of the central issues in the case has been whether Dean stepped onto Byerley's property or picketed on public property alone. On this record, Dean cannot tenably claim unfair surprise when Byerley pursued his long-standing and long-expressed theory of the case by mentioning it in opening arguments.

Dean next claims that the district court abused its discretion by excluding a "Notice of Referral" of Dean's application to a state-bar character and fitness committee that purportedly showed that Byerley had retaliated against Dean's picketing by interfering with his bar application. Dean received the notice on June 13, 2001. At a hearing two months later, Dean told the district court that he had no intention of making a claim that Byerley "did anything to prevent [him] from being admitted to the bar." JA 50. "I'm alleging," Dean stated, "that at the moment that the incident occurred I became afraid to exercise my constitutionally protected rights by . . . picketing, and that it had a chilling effect on my constitutional rights." JA 50. The district court confirmed this,

stating: "Okay. So the issue of whether or not you're qualified to be a member of the bar or whether or not you have been or will be admitted to the bar, or whether this defendant has or would do anything to improperly keep you from being admitted to the bar, none of that would be an issue in this lawsuit?" JA 52. Dean responded: "Absolutely not." JA 52. Based on these representations, the district court entered an order precluding Dean "from raising or discussing at trial any of the contentions stated above," i.e., "that the defendant actually did or would do anything improper to deny plaintiff admission to the State Bar of Michigan." JA 46–47.

When Dean nonetheless tried to admit this notice at trial, the district court invoked its in limine ruling in denying Dean's request. In its denial of the motion for a new trial, the district court explained that "it would have been quite prejudicial to Byerley to, at the last minute, change the focus of Dean's complaint from chilling his picketing rights to interfering with his bar application." JA 79–80. By any measure, the district court's ruling was correct. Instead of defending a claim for emotional distress allegedly caused by the chilling effect on Dean's continued picketing, the introduction of the notice (and this new theory of the case) would have forced Byerley suddenly to present witnesses and exhibits supporting the reasons for the character-and-fitness inquiry into Dean's application, as enumerated in the notice, to dispel the accusation that this inquiry was in some way illegitimate. The district court acted well within its discretion in prohibiting the introduction of the application.

Dean relatedly claims that the district court abused its discretion in excluding a letter authored by Byerley and sent to the character and fitness committee memorializing the events of March 27. Regardless of whether it would have been an abuse of discretion to exclude this letter,

the fact is that the district court *allowed* Dean to introduce the letter during his cross-examination of Byerley.

Dean next argues that the district court erred in excluding a letter to the editor published in the Michigan Bar Journal, in which a state bar member made allegations of wrongdoing against Byerley that have no connection to the factual allegations in this case. Relevant or not, the evidence amounted to hearsay, and Dean offers no argument that the evidence fit within any hearsay exception. *See Larez v. City of Los Angeles*, 946 F.2d 630, 643 (9th Cir. 1991).

Dean next argues that the district court wrongly excluded pleadings and briefs from unrelated litigation filed by Byerley in his capacity as attorney for the State Bar. Dean contends that Byerley's statements in those papers contradict his statements in this litigation. But Byerley was acting as an attorney, not as a party, in these other cases, and the cases at any rate concern challenges to the bar admissions program that have no bearing on Byerley's alleged violation of Dean's First Amendment rights. The district court acted well within its discretion in refusing to admit this evidence.

Dean next challenges the admission of the testimony of a state bar investigator regarding the handling of Dean's application, claiming that it was inconsistent with the district court's decision to exclude evidence of Byerley's involvement with his bar application. But the investigator's testimony concerned the handling of Dean's application before any picketing had occurred and was used simply to give context to the first meeting between Dean and Byerley on March 16, 2001. Contrary to Dean's allegations, moreover, the district court correctly found that "no confidential information from [Dean's] character and fitness file was disclosed at trial." JA 80.

Dean lastly argues that the district court erred in admitting evidence that Dean continued to picket another house after Byerley allegedly threatened him with retribution. Dean accurately notes that the house that he picketed did not belong to a state actor and that he was therefore at no risk of having his free-speech rights chilled. But that observation does not bear on the district court's reason for accepting the evidence: namely, that it showed Dean's state of mind following Byerley's allegedly threatening actions. In what was ultimately a credibility dispute between Dean and Byerley, the district court did not abuse its discretion in allowing Byerley to introduce evidence showing that Dean, far from being in emotional distress following his picketing of Byerley's house, continued his picketing activities elsewhere that same day.

## III.

For these reasons, we affirm.