*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

TINA DILLON,
    *Plaintiff-Appellee/Cross-Appellant,*

    *v.*

COBRA POWER CORP.,
    *Defendant-Appellant/Cross-Appellee,*

LAKE CUMBERLAND MARINE, L.L.C,
    *Defendant-Appellee (No. 07-5459).*

Nos. 07-5458/5459

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 01-00002—Karen K. Caldwell, District Judge.

Argued: July 29, 2008

Decided and Filed: March 30, 2009

Before: BATCHELDER and GILMAN, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** John T. Pruitt, Jr., TRAVIS, PRUITT, POWERS & YEAST, Somerset, Kentucky, for Appellant. John G. Prather, Jr., LAW OFFICES OF JOHN G. PRATHER, Somerset, Kentucky, Thomas Pastore, PASTORE & GOODEN, Indianapolis, Indiana, for Appellees. **ON BRIEF:** John T. Pruitt, Jr., TRAVIS, PRUITT, POWERS & YEAST, Somerset, Kentucky, for Appellant. John G. Prather, Jr., Winter R. Huff, LAW OFFICES OF JOHN G. PRATHER, Somerset, Kentucky, Thomas Pastore, PASTORE & GOODEN, Indianapolis, Indiana, for Appellees.

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

**INTRODUCTION**

JACK ZOUHARY, District Judge.  This diversity case arises from the sale of a high-performance speed boat by Defendant Lake Cumberland Marine ("Cumberland") to Plaintiff Tina Dillon.  Dillon claims the boat was defective.  Defendant Cobra Power ("Cobra") manufactured the engines and transmissions, and Cumberland installed them in the boat in May 2000.  The subsequent repair history of the boat is long and tortuous (not unlike the seven-year history of this lawsuit).  After several unsuccessful attempts to repair the boat engines and outdrives, Dillon, in January 2001, sued Cumberland for breach of contract and warranty, as well as a violation of the Kentucky Consumer Protection Act (KCPA); she also sued Cobra for breach of warranty.

The district court granted partial summary judgment in October 2003, dismissing the warranty claim against Cobra (and thereby dismissing it as a party), and also dismissing the warranty claims against Cumberland.  In July 2004, the court held a bench trial on Dillon's remaining breach of contract claim against Cumberland.  The court dismissed this remaining claim against Cumberland, but *sua sponte* reinstated the breach of warranty claim against Cobra, found it liable, and entered judgment on that claim in favor of Dillon.  The court did so after hearing the testimony of Randy Garciga, President of Cobra, called by Cumberland to testify at the bench trial.  Because Cobra had been previously dismissed from the lawsuit, counsel for Cobra was not present at the trial.  The court found Garciga's testimony contradicted his earlier affidavit, which was the basis for the earlier dismissal of Cobra.

The court also granted Dillon's post-trial request to amend the complaint to add conversion and KCPA claims against Cobra, although two years earlier the court had denied a similar request by Dillon to add a claim of conversion against Cobra.  In June 2006, the court entertained briefing from Cobra opposing Dillon's proposed amendments

and contesting the court's post-trial finding of liability. Ultimately, and without further hearing, the court granted summary judgment in favor of Dillon and entered a verdict of $50,400 in compensatory damages against Cobra in December 2006, nearly two and a half years after the bench trial with Cumberland.

Cobra and Dillon each appeal from the adverse decisions against them, including pretrial and post-trial orders on amendment of pleadings. Cumberland defends the district court's decision to dismiss all claims against it.

For the reasons discussed below, we affirm in part and reverse in part, and, given the already lengthy history of this lawsuit, reluctantly, but properly, remand the matter for further proceedings.

**FACTUAL BACKGROUND**

Dillon contracted with Cumberland in November 1999 to purchase a Fountain power boat with two 800 HP engines, each with an outdrive. After some delay, Cumberland installed these engines and delivered the boat to Dillon in May 2000. A purchase agreement between Dillon and Cumberland contained an express warranty disclaimer.[1]

Dillon claims that she was given only 720 HP engines, rather than the promised 800 HP, and that she experienced problems with the outdrives. Cobra subsequently repaired both outdrives, the first free of charge, and then shipped each repaired outdrive to Cumberland for re-installation on the boat. Cumberland returned the boat to Dillon

---

[1] The disclaimer reads:

EXCEPT TO THE EXTENT REQUIRED BY STATE LAW, SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. All warranties covering the equipment referenced on page 1 of the Agreement, if any, are made by the manufacturer. A copy of any applicable manufacturer's warranty shall be delivered by Seller to Buyer.

* * *

THIS DOCUMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN ITS PARTIES. NO OTHER REPRESENTATIONS, INDUCEMENTS OR PROMISES (WRITTEN OR VERBAL) HAVE BEEN MADE WHICH ARE NOT SET FORTH IN THIS AGREEMENT.

in July 2000.  Neither Dillon nor Cumberland paid Cobra for the second repair bill and freight charges.

In August 2000, Dillon noticed smoke from the engine compartment and shipped one of the engines back to Cobra for inspection and repair.  Cobra built a new engine and shipped it to Cumberland for installation.  Cobra sent Cumberland an invoice for half the cost of the new engine ($14,500), but it too was never paid.  Nonetheless, the new engine was installed by Cumberland, and the boat was delivered back to Dillon.  The next month, during a race, the same engine suffered an oil line break and also lost an outdrive.  Dillon disassembled and attempted, unsuccessfully, to repair the outdrive; the engine was repaired by a Cumberland mechanic at the dock.  Dillon sent the repaired engine back to Cobra for inspection, but Cobra found nothing wrong and retained possession of the engine while the parties attempted to negotiate responsibility for unpaid charges.

Dillon attempted to revoke acceptance of the boat by way of two letters, dated October 27, 2000 and November 2, 2000, respectively.  Cumberland refused to accept either a return of the boat (it was then missing the engine still being held by Cobra and an outdrive remained unrepaired) or a refund of the purchase price.  This lawsuit followed in January 2001.

## PROCEDURAL BACKGROUND

Upon completion of discovery, all parties filed motions for summary judgment. In October 2003, the district court dismissed Dillon's breach of express warranty claim against Cobra.  This was the only claim against Cobra, and therefore it was dismissed as a party to the lawsuit.  The litigation continued between Dillon and Cumberland.  A two-day bench trial took place in July 2004. Following the bench trial, the court invited Dillon to address in her post-trial briefing whether the court had authority to reinstate the lawsuit against Cobra; at that time, the court did not invite briefing from Cobra.  It was not until Cobra's counsel received a court order in August 2005 that Cobra learned the court was not only vacating its earlier dismissal of Cobra, but, even further, was

holding Cobra liable for a breach of warranty that entitled Dillon to recover damages from Cobra.

Following the court's August 2005 order, Dillon and Cobra filed numerous post-trial memoranda and motions, and the district court issued several orders.  The district court orders, both before and after the bench trial, which have been appealed, are as follows:

- January 10, 2003 (JA 75):  The court denied Dillon's motion to amend her complaint to assert conversion against Cobra.

- October 27, 2003 (JA 24):  The court granted partial summary judgment, dismissing Cobra as a party.

- August 5, 2005 (JA 110): The court set forth findings of fact and conclusions of law from the July 2004 bench trial, ruling in favor of Dillon, in part, and in favor of Cumberland, in part.

- June 14, 2006 (JA 36): The court ordered Cobra to file a pleading to contest its liability and granted Dillon's motion for leave to assert conversion and KCPA claims.

- December 14, 2006 (JA 225): The court terminated the case, finding Cobra liable for breach of warranty and conversion, but denying Dillon's attempted amendment of a KCPA claim, and awarding Dillon $50,400 (difference in value between the two engines purchased from Cobra and the value of the single engine still in Dillon's possession).

Each of these rulings is reviewed below.

## DISCUSSION

**The district court erred in reversing its prior grant of summary judgment in favor of Cobra and later entering judgment in favor of Dillon.**

This Court reviews the grant or denial of summary judgment *de novo*.  *Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701, 704 (6th Cir. 2003).

After its order granting summary judgment to Cobra and dismissing Cobra as a party (JA 24), the court conducted a bench trial on Dillon's remaining claims against Cumberland.  At this trial, Randy Garciga, President of Cobra, testified that Cobra

intended to warrant the engines for six months, apparently contradicting Cobra's argument in its summary judgment motion that it had extended no warranty to Dillon. In its findings of fact and conclusions of law following the bench trial, the court ruled that Cobra had warranted the engines and breached the warranty. The court reaffirmed this ruling twice, in its June 2006 and December 2006 orders, respectively.

Cobra argues that reversing summary judgment and simultaneously imposing liability against a party previously dismissed from the litigation violates due process. In particular, Cobra notes it was dismissed as a party in October 2003 and was no longer on the docket for service of pleadings or for any court orders. Moreover, Cobra did not participate in the July 2004 bench trial.

It was not until two years later, in June 2006, that the court invited Cobra to "show cause" why, in light of Garciga's sworn testimony at the bench trial, the court should not alter its summary judgment order of three years earlier to find Cobra breached the warranty to Dillon  (JA 46). This invitation was limited to briefing, with a review of the bench trial transcript, but no opportunity for discovery.

Dillon cites no legal authority supporting reinstatement of previously dismissed and absent parties based upon testimony offered at a later trial. Instead, Dillon cites the interlocutory nature of partial summary judgment orders and argues Cobra had a duty either to attend trial voluntarily -- though Dillon does not explain what Cobra could have done beyond acting as a spectator -- or to seek entry of final judgment pursuant to Federal Civil Rule 54(b). We conclude that the district court erred when it reversed its grant of summary judgment based on evidence elicited at the later trial.

Federal Civil Rule 56 makes clear that summary judgment is a *pretrial* procedure. The district court correctly noted that trial testimony may be submitted for consideration at the summary judgment stage, but such testimony comes from prior proceedings that are submitted as part of the pretrial record. In other words, sworn testimony given in earlier court proceedings is the same as "the pleadings, the discovery [including depositions] and disclosure materials on file, and any affidavits" which Rule 56(c) expressly allows the court to consider. Here, Garciga's testimony was produced

at trial in the very case for which summary judgment was decided, long after the pretrial process had come to an end. This is not the type of evidence on which a court may base summary judgment.

Furthermore, the pretrial nature of summary judgment is not changed by Rule 56(a) and its use of "any time" to describe when a summary judgment motion may be filed. The Advisory Committee Notes on the 1946 Amendments make clear that this language was used to allow the filing of motions earlier than previously allowed, and that the language "does not permit the filing of a summary judgment motion so late that it cannot be decided until after the case has gone to trial." *United States v. Gilbert*, No. 93-16113, 1995 U.S. App. LEXIS 3673, at *5 (9th Cir. Feb. 17, 1995). Accordingly, it was not appropriate for the district court to consider evidence produced at trial in re-adjudicating the pretrial summary judgment motion that it granted in favor of Cobra.

Moreover, the order that ultimately granted Dillon summary judgment was issued in December 2006. Up to that point, Dillon's only motion for summary judgment claimed that Dillon had properly revoked acceptance of the boat and was entitled to summary judgment against Cumberland, a motion which the district court dismissed. Nevertheless, the court revised its 2003 order, to now grant summary judgment in favor of Dillon, by construing Dillon's post-trial submission, filed in September 2005, as a motion for summary judgment. Thus, the post-trial order of 2006 reversing the earlier summary judgment order -- a pretrial order -- was decided by a motion filed after trial and based solely on Garciga's trial testimony. This cannot be right.

In addition to the plain reading of how amendments are made pursuant to Federal Civil Rule 15 (see later discussion), the case law supports our conclusion on the unusual procedural path of this case. This Court in *O'Daniel v. Parkview Mem'l Hosp., Inc.*, 533 F.2d 325 (6th Cir. 1976), held that a district court had no authority to "realign" parties after trial. In that case, the district court had previously dismissed a direct claim by plaintiff against Parkview, a third-party defendant. However, after a bench trial and on plaintiff's motion, Parkview was reinstated and held jointly and severally liable to plaintiff with other defendants. This Court reversed the judgment, reasoning that

sometimes Rule 15 "may be availed of to permit an amendment after judgment and a realigning of parties. However, this may only be done if all parties have notice of the issues being tried and no prejudice will result." *Id.* at 330. The Court emphasized the prejudice Parkview suffered in approaching the trial believing it would be only a third-party defendant, but later being reinstated and held directly liable. *O'Daniel* highlights the principles that guide our analysis: notice, opportunity and prejudice.

Other federal circuits have considered the authority of a district court, after trial, to reverse its previous finding of summary judgment that dismissed a party. *See Alberty-Velez v. Corporacion de Puerto Rico para la Difusion Publica*, 242 F.3d 418, 425-26 (1st Cir. 2001) (finding prejudice to defendant when district court reversed, at trial, prior finding of partial summary judgment, thereby broadening scope of trial -- "the judge must inform the parties and give them an opportunity to present evidence relating to the newly revived issue" or grant a continuance of the trial to avoid prejudice); *Leddy v. Standard Drywall, Inc.*, 875 F.3d 383, 386-87 (2d Cir. 1989) (finding that failure to inform parties and provide an opportunity to present evidence relating to a newly revived issue might cause "substantial prejudice" where district court ruled certain ERISA claims were barred by res judicata, then reversed this ruling at the beginning of a bench trial); *United States v. Arkansas*, 791 F.2d 1573, 1576-77 (8th Cir. 1986) (remanding to the district court for further proceedings because due process demanded both notice and an opportunity to be heard on the issue of liability).

This Court has applied *Leddy* to a similar situation, holding a party that was present at trial was not prejudiced when the district court reversed its pretrial ruling on the extent of liability. *Huss v. King*, 338 F.3d 647 (6th Cir. 2003), cited *Leddy* extensively and ultimately concluded:

> Here, the district judge informed Huss of the change of his initial ruling and gave him an opportunity in post-trial briefing to argue that he was entitled to continued payment of maintenance and cure after January 1998. Although the court's change of its ruling did not occur until after trial, it was based on the damage evidence relevant to maintenance and cure presented at trial. Counsel on brief made no attempt to show that the post-trial change of the ruling prejudiced his trial presentation.

*Id.* at 651.

If notice and opportunity are deficient, the court then must determine whether the party was substantially prejudiced. The instant case stands in stark contrast to *Leddy* and *Huss*, where the adversely affected parties were *present at trial* and admitted on appeal that they suffered no identifiable prejudices as a result of the late reversal. Cobra's situation is more analogous to that of the defendant in *United States v. Arkansas*, where the state was not a party at trial but was subjected to judgment and liability several years later. Once dismissed from the case, Cobra had no reason or right to participate in the later trial. No claim was pending against it at that time.

The prejudice to Cobra in the instant case is obvious. Certainly with a bench trial, the better procedure would have been to adjourn the trial, join Cobra again as a party defendant, and allow it an opportunity to respond to the new testimony. Participation at trial as a party may well have prevented any prejudice by such a late reversal of summary judgment.

### The district court erred in allowing Dillon to amend her complaint post trial to allege conversion against Cobra.

The district court's decision to allow the amendment of pleadings pursuant to Rule 15 is reviewed for an abuse of discretion. *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999).

Dillon twice attempted to amend her complaint to add a claim of conversion against Cobra and/or Garciga. The first occasion was in November 2002, prior to trial. The court denied this attempt. Dillon's second attempt came in her post-trial submission and was interpreted by the district court as a motion under Rule 15(a) -- as opposed to Rule 15(b), which is how Dillon framed it -- and was granted by the court. The district court determined that "the issue on Dillon's conversion claim is whether, in failing to honor Dillon's warranty, Cobra converted an engine belonging to Dillon for Cobra's own benefit. The facts supporting the breach of warranty claim are the same as those supporting the conversion claim." The court further found no additional discovery was

needed on either claim, and determined that Cobra was not prejudiced by allowing Dillon to amend her complaint -- nearly five years after the original filing.

Cobra argues that it was prejudiced by the added conversion claim post-discovery, post-motion deadline and post-trial because it was forced to defend itself against a claim on which Cobra was never afforded the opportunity to take discovery, and where the only testimony elicited at trial was by opposing counsel.  Because Cobra was no longer a party, it was not present to call witnesses, cross-examine, or otherwise introduce evidence.

Rule 15(a) governs "Amendments *Before* Trial" (emphasis added), and provides in pertinent part that "[t]he court should freely give leave [to amend] when justice so requires."  Subsection (b) governs "Amendments *During and After* Trial" (emphasis added), and provides in pertinent part:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move -- at any time, even after judgment -- to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue.

As mentioned above, although Dillon requested in her post-trial submission that the district court grant her leave to amend pursuant to Rule 15(b), the district court actually interpreted this request as a motion under Rule 15(a).  In other words, Dillon's request made in her *post-trial* submission was interpreted to be a request for an amendment *before* trial.  The district court's only basis for handling Dillon's request in this manner was its conclusion, unsupported by any law or reasoning, that Rule 15(b) was inapplicable because Cobra was not a party to the bench trial.  Neither the district court in its reasoning, nor Dillon on appeal, is able to provide *any* legal support for treating an attempt to amend pleadings post-trial as a motion under Rule 15(a).  Simply put, there is no basis in law -- statute, rule, or case -- for handling an amendment in this manner.  This alone requires reversal.

There is some support for allowing post-trial amendments adding or realigning parties:

> The pleadings may be amended to add parties in very late stages of the litigation, even after trial, but only when there is no denial of due process by doing so. Rule 15(b)(2) expressly authorizes amendments of the pleadings to conform to the proof actually presented at trial by express or implied consent of the parties (see § 15.18[1]). . . . Similarly, a defendant who actually appears in the litigation and actively defends against the plaintiff's claims may be formally added to the pleadings in a post-trial amendment to conform to proof.

MOORE'S FEDERAL PRACTICE § 15.16[1] (3d ed. 2008); *Saalfrank v. O'Daniel*, 533 F.2d 325, 330 (6th Cir. 1976) ("In certain circumstances Rule 15 . . . may be availed of to permit an amendment after judgment and a realigning of parties.").

Here, however, the express requirement of Rule 15(b)(2) was clearly not met. The parties did not consent -- either expressly or impliedly -- to try the issue of whether Cobra converted Dillon's engine. Surely Cobra did not give such consent, since it was neither a party to, nor represented at, the trial. The orders granting the amendment, as well as finding against Cobra on this claim, are reversed.

**The district court did not err in refusing to allow Dillon to amend her complaint post-trial to allege that Cobra violated the KCPA.**

Again, the decision of the district court regarding amendment of pleadings is reviewed for an abuse of discretion. *Duggins*, 195 F.3d at 833.

The same reasoning set forth above regarding the claim of conversion applies to the attempted amendment to assert claims in violation of KCPA: namely, the requirements of Rule 15(b)(2) are not met. Dillon again argues Cobra could have attended the trial and should not benefit from its "voluntary absence." But this is not the way the system works -- a party is not expected to attend a trial in a case where it is no longer a party, and its attendance would confer no right to participate in the trial. Furthermore, Cobra would be prejudiced by the addition of the KCPA claim because the KCPA claim involves elements for which discovery was never conducted. Such a late

amendment would clearly prejudice Cobra. Dillon was correctly denied the opportunity to amend her complaint to add this new claim.

### The district court did not err in finding that Cumberland did not breach any contract.

Dillon's breach of contract claim against Cumberland proceeded to a bench trial. We review the district court's conclusions of law *de novo*, and its findings of fact for clear error. *Little Caesar v. OPPCO*, 219 F.3d 547, 550 (6th Cir. 2000).

As the district court noted, the basis for Dillon's breach of contract claim is not entirely clear. The district court concluded that Dillon was asserting a breach of warranty, and that Dillon's complaints about the boat motors related to their allegedly defective condition and poor repair attempts. The district court concluded that the integration clause of the purchase agreement (see *supra*, note 1) precluded consideration of extrinsic promises and therefore found that Cumberland delivered a boat to Dillon that substantially conformed to the written specifications of the contract.

We conclude that the district court did not commit clear error in holding that Cumberland did not breach the contract. On appeal, Dillon still fails to articulate a basis for breach of the contract, or to identify a specific contract provision that Cumberland allegedly breached. Instead, Dillon focuses on her right to revoke acceptance of the boat in light of the history of unsuccessful repairs. This argument is unavailing. Her attempted revocation in October - November 2000, when she sent letters to Cumberland expressing her dissatisfaction with the boat and seeking to return it, was tardy. By that time, one of the outdrives had been disassembled for repair and one of the engines was held by Cobra.

Dillon's reliance on *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287 (Ky. 1991), and *Ford Motor v. Mayes*, 575 S.W.2d 480 (Ky. Ct. App. 1970), is misplaced. Both cases dealt with a vehicle buyer's ability to revoke acceptance under the KCPA and under the manufacturer's warranty, and did not address the express disclaimer of warranty by a seller. Furthermore, these cases do not apply because Dillon attempted to revoke acceptance after a "substantial change." Namely, Dillon removed one of the

boat's engines for repair by a third party and, as a consequence, the boat no longer had two engines at the time of Dillon's attempted revocation.

The district court applied the appropriate legal standard and did not clearly err in determining that the attempted revocation was improper.

**The district court erred in its determination of damages.**

The district court awarded Dillon damages of $50,400 on her claim against Cobra for breach of warranty. Because the summary judgment has been reversed, the damage award is necessarily reversed as well. However, we will go further and provide guidance on the issue of damages if that is an issue that the district court finds necessary to reach.

Kentucky law provides the following measure of damages and range of permissible recovery for breach of warranty:

> (2) The measure of damages for breach of warranty is *the difference at the time and place of acceptance* between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. (3) In a proper case any incidental and consequential damages under KRS 355.2-715 may also be recovered.

KRS 355.2-714 (emphasis added).

The district court erred in calculating damages because it used the *current* value of the engine Dillon received instead of the value *at the time and place of acceptance*. Dillon paid a total of $70,400 for the two engines. The engine which remained in her possession was valued at $20,000 by the district court, reflecting the current value of the engine including the normal rate of depreciation. The court then deducted $20,000 from the original purchase price for both engines, for an award of $50,400. Cobra "held" the second engine during this dispute and that engine was totally discounted. The district court erred by not taking into account *any* value for the second engine, which, even if defective upon delivery, had to have some value.

Because the district court did not award damages based on values at the time and place of delivery, it erred under KRS 355.2-714(2).[2]

**CONCLUSION**

For all the reasons stated above, we (1) reverse the district court's grant of summary judgment in favor of Dillon on her breach of warranty claim against Cobra; (2) reverse the district court's order allowing Dillon to amend her complaint to allege a claim of conversion against Cobra; (3) affirm the district court's order refusing to allow Dillon to amend her complaint post-trial to allege that Cobra violated the KCPA; (4) affirm the district court's order that Dillon did not properly revoke acceptance of the boat; (5) affirm the district court's orders that Cumberland did not breach the contract, did not violate the KCPA, and did not breach any warranty; and (6) reverse the district court's award of damages.

The case is remanded for further proceedings limited to Dillon's claim against Cobra for breach of warranty.

---

[2] Because damages for conversion will not be at issue on remand, the district court should not address the appropriateness of any damages awarded on the conversion claim. We note, however, that the measure of damages for conversion is not the same as that for breach of warranty. Under Kentucky law, "the traditional measure of damages for the conversion of personal property is the fair market value of the property, with interest from the time of conversion." *Motors Ins. Corp. v. Singleton*, 677 S.W.2d 309, 314 (Ky. Ct. App. 1984).